ALBERT MARSHALL, plaintiff in error, *vs.* THE STATE OF GEORGIA, defendant in error.

A man who can voluntarily shoot, is capable of entertaining and acting from malice, unless he can plead some infirmity besides drunkenness. To be too drunk to form the intent to kill, he must be too drunk to form the intent to shoot. Intent to kill is the only necessary ingredient of legal malice, in the absence of justification and of all adequate provocation. 29 *Ga.,* 607; 55 *Ib.,* 30.

Criminal law. Drunkenness. Insanity. Before Judge KIDDOO. Randolph Superior Court. May Term, 1877.

Reported in the opinion.

A. Hood; L. S. Chastain, for plaintiff in error.

James T. Flewellen, solicitor general, by Jno. T. Clarke; Herbert Fielder, by Z. D. Harrison, for the state.

Bleckley, Judge.

The evidence indicates that the prisoner and the deceased were strangers. So far as appears, they met but the one time. This was in a bar-room, at about eleven o'clock at night. Deceased was seated with another person. Prisoner walked in, and got a basket. Deceased asked him if he had eggs in the basket. Prisoner answered no, but that he had had eggs in it. Deceased said, "Why did you not bring them to me? I would have given as much for them as anybody else, or more." Prisoner answered, "I don't know you," and added, "One damned fool ought to have known another." Deceased said, "Yes, of course they ought; but I would have given you as much for your eggs as anybody." Prisoner said, "You are a damned liar." Deceased replied, "I don't like to take the damned lie, and you mustn't give it to me." Prisoner said, "I didn't mean any harm by it." Deceased said, "If you didn't, it is all right." Deceased had gotten up, and was standing beside the bar. Prisoner turned to leave the room, walked to the door, and when upon the step, wheeled round, saying, "I am not afraid to give you the damned lie," presented a pistol with his left hand, and fired immediately. The parties were eight or ten feet apart. The ball took effect just above the nipple, in the left breast of deceased, and produced death in a few minutes. As soon as the pistol fired, the other person present advanced upon the prisoner to arrest him. Prisoner presented the pistol at him, and ordered him to stand back. He withdrew behind the bar, and prisoner continued to present the pistol, and kept telling him to stand back. Prisoner then ran off, and in a couple of minutes was overtaken and arrested. The prisoner had been drinking during the

day, and in the afternoon was in a long drunken sleep. After getting up from that, the evidence indicates that he was not deeply intoxicated. Shortly before the homicide he appeared to be drinking, but not very drunk. He outran a person who pursued him, and his running was pretty straight. Some evidence was adduced as to his previous good character, most of it relating to a period of time not later than four or five years anterior to the homicide.

The jury found the prisoner guilty of murder, and his counsel made a motion for a new trial, which the court overruled. The grounds of the motion were only that the verdict was not warranted by the law and the evidence.

This is a case of shocking, barbarous murder. The sympathetic counsel who brought it here said that he was governed by sentiment, and felt unwilling to yield his client to the executioner without taking the opinion of this court on the element of drunkenness as a mitigating fact. It seemed to him, he said, that the "poor negro" ought to be punished, but not with the extreme penalty of the law; that his real offense was manslaughter, not murder. Only the zeal and devotion of advocacy could generate a conclusion so amiable and erroneous. The record which the counsel has brought to us drips with blood. The degree of drunkenness, shown by the evidence as existing at the time of the homicide, was not great. But had it been the utmost possible degree consistent with the power of discharging a pistol, the law of the transaction would have been the same. A man who can voluntarily shoot is capable of malice, unless he can plead some infirmity besides drunkenness. To be too drunk to form the intent to kill, he must be too drunk to form the intent to shoot. And intent to kill is the only necessary ingredient of legal malice, where neither justification nor adequate provocation is made to appear. *Jones vs. The State*, 29 *Ga.*, 607. Moreover, the presumption that a man intends, not only the deed he does, but the natural and proximate consequences of the deed, is, in criminal law, as

AUGUST TERM, 1877.          157

applicable to the drunk man as to the sober man. *Idem,* 608. See 55 *Ga.,* 30, and cases cited.

Judgment affirmed.