## HANVEY *vs.* THE STATE OF GEORGIA.

1. Although a juror may have been accepted and sworn in chief, if before the case proceeded or the panel was completed he presented an excuse on the ground of sickness, there was no error in excusing him and proceeding with the cause; especially so where the defendant's counsel agreed to submit the question of his excuse to the court.

2. Voluntary drunkenness is no excuse for crime. A charge to this effect, but with the addition that it might be considered by the jury, like any other fact, to shed light on the transaction, was quite as favorable to the prisoner as the court could legitimately give.

3. Witnesses who have not been called and put under the rule may testify in rebuttal of a prisoner's statement, where the court is satisfied that the ends of justice require it.

(*a*.) That the defendant has discharged his witnesses before testimony in rebuttal of his statement has been introduced, is his own fault: Especially is this not a ground for a new trial where no evidence was introduced on behalf of the defense, and it does not appear that the defendant had any witnesses.

4. If a deadly weapon be used in a homicide in the usual and natural manner in which such weapon would produce that result, the presumption of an intention to kill would arise. *Aliter* if the weapon were used in a manner not naturally calculated 'to produce such result.

(*a*.) Such is the substance of the charge, when taken in connection with its context, and it was not error.

5. In order for newly discovered evidence to be a ground for a new trial, it must appear that it could not have been discovered before the trial by the use of reasonable diligence.

(*a*.) Mere words, threats, menaces or contemptuous gestures are no considerable provocation in the eye of the law, and if proved would not justify a homicide.

(*b*.) When the testimony of newly discovered witnesses is made a ground of a motion for new trial, affidavits as to their residence, character and credibility should be produced.

Murder. Jurors. Practice in Superior Court. Criminal Law. Before Judge HARRIS. Carroll Superior Court. October Term, 1881.

Reported in the decision.

REESE & ADAMSON; T. W. LATHAM, for plaintiff in error.

H. M. REID, solicitor general, by brief; COBB & BROWN; W. P. Cole, for the state.

CRAWFORD, Justice.

The plaintiff in error was charged with murder, and found guilty; he submitted a motion for a new trial which was overruled, and that ruling is the error alleged in this case.

1. It is complained that the judge excused a juror who

had been sworn "in chief." The record shows that after he had been accepted and sworn, he presented the certificate of a physician that he was unable to serve; the attention of counsel for the prisoner was called to the fact, who agreed that the judge might hear the juror's excuse under oath, which was done, and the juror excused. There was certainly no error in discharging the sick juror, and proceeding with the cause, and especially when prisoner's counsel consented to submit the question of the juror's condition to the decision of the judge, and before the case was submitted or the panel was complete.

2. The second ground of error alleged is, that the judge refused to charge in substance, that if the defendant used a weapon which he casually obtained, and was drunk at the time, that then the jury could look to his drunkenness to ascertain whether the killing was malicious. There were other grounds of exception arising upon the refusal of the judge to charge upon the subject of drunkenness, as to the effect which it should have upon the finding of the jury. They were all refused by the judge, and properly so under the Code and the decisions of this court. That voluntary drunkenness shall not be an excuse for crime is the written law of this state, and the sooner that it is recognized and observed, the better it will be for all over whom it is to be enforced.

One who voluntarily kills, must meet the demands of justice and of law with some other excuse than that of drunkenness. In the language of Justice Bleckley, in *Marshall vs. The State*, 59 *Ga.*, 154; "To be too drunk to form the intent to kill, the slayer must be too drunk to form the intent to shoot."

In this case the judge charged the jury that voluntary drunkenness was no excuse for crime, and would not reduce the killing from murder to any lower grade of homicide, but that it was a fact that might be considered, like any other fact, to shed light, if it could do so, upon the transaction. This goes as far as has ever been authorized

by any of the rulings of this court, and is quite as favorable to the accused as any of the more recent decisions would allow.

3. The next assignment of error is, that after the state had closed, and the prisoner had made his statement, witnesses in rebuttal were allowed to testify who had not been "put under the rule," and who had remained in the court-house during the trial, and this after the defendant's witnesses had been discharged.

Witnesses who have not been "put under the rule" may testify in rebuttal, where the court is satisfied that the ends of justice require it. It will take proper care always to have the witnesses of either party examined out of the hearing of each other upon request, but to exclude any or all who may have happened to be in the court-room pending the trial, and who had not been sworn and put under the rule, would be extending the rule beyond its reason.

Upon the latter branch of the ground, that the defendant's witnesses had been discharged, it is only necessary to say that he offered no testimony whatever, and it does not appear that he had any witnesses; if, however, he did have, and discharged them, knowing that the state had the right to rebut his statement, it was a fault of his own, and not that of the state.

4. The next ground of error assigned is because the court in his charge to the jury used the following language: "If a deadly weapon is used to accomplish the killing, which is likely to produce death when used in the manner the proof shows it was used, the law presumes that the person using it intended to kill."

Taking this sentence by itself, it would doubtless be construed to have reference to the particular case then being tried, and to the proof which had been introduced. But the preceding part of the charge clearly excludes all idea of such construction. The judge had defined murder and was defining malice, and illustrating how the jury

might ascertain whether it existed, and in doing so he said: " Whenever a killing by unauthorized violence is shown, the law presumes it was done with malice aforethought and denominates it murder, unless the accompanying proof shows that it was done without malice. If the unauthorized killing be shown, and the accompanying proof does not show it was done without malice, it then devolves upon the accused to show that it was done without malice. If a deadly weapon is used to accomplish the killing, which is likely to produce death when used in the manner the proof shows it was used, the law presumes that the person using it intended to kill. This presumption may be removed by proof. Express malice is the deliberate intention," etc. There can be no question as to the meaning of the sentence excepted to, which was, that if a deadly weapon were used in the killing, and the proof showed that it was used in the manner in which such weapons were used to kill, then the law presumed that the person so using it intended to kill. That is to say, if a man used a pistol in the killing, and fired it, and thus killed the deceased, the presumption of the law was that he intended to kill, because he used it in the manner such weapons were used to kill. But if he should strike the deceased with the barrel and kill him, that not being the manner in which such deadly weapon was used to kill, then the presumption would not arise. And so, if with a bowie knife, dirk, or pocket knife, he should strike the deceased with the handle and thus kill, this not being the manner in which such deadly weapons are used to kill, the presumption would not arise. This was clearly the meaning of the judge, yet being inaptly expressed, learned counsel have sought to make it apply to the particular case on trial, and thus secure another trial for their unfortunate client.

5. Another assignment of error is made on the refusal to grant a new trial on newly discovered evidence.

A. J. and J. W. Robinson, two of the persons present

at the homicide, give affidavits to the effect that Bird, one of the state's witnesses, was inside the grocery with his back to the door, and could not have seen the difficulty; that Allen, another of the witnesses for the state, was drunk, and Harris, who also testified, was not present, or if he were they did not see him. They further say that they heard McMullin, the deceased, give Hanvey the damned lie, who said to him he must not do that; he would not allow it; when McMullin replied that he had the best pistol that ever fired, "and if you (meaning Hanvey,) don't like it I will blow your damned brains out," and thrust his right hand into his breeches' pocket as if to draw a pistol, whereupon Hanvey, who was near him, instantly struck him, and he fell from his horse. They state, also, that about a half an hour before the difficulty McMullin was abusing Hanvey in the grocery, who said to him, "look here, I want you to go off and let me alone," that McMullin soon went out, mounted his horse and, riding up in front of the door, said that his horse could outrun anything in three states, which was replied to by Hanvey's saying that he could find one to beat it, and then the difficulty followed as they had stated it.

There are three good and sufficient reasons why this newly discovered evidence should not entitle the defendant to a new trial. The first is that these two persons were known to have been present at the homicide and witnessed the difficulty, and that there were only a very few who were there, and yet there was no diligence whatever shown to procure their testimony. Besides, one of them appears to have been present at the trial, and was not sworn because he disclosed nothing, as is shown by the affidavit of Mr. Latham, that was material or important to the defendant.

The second reason is that the testimony, if introduced, would not change the verdict by reducing it from murder to manslaughter, or justifiable homicide. "Mere words, threats, menaces, or contemptuous gestures, are no con-

siderable provocation in the eye of the law and, therefore, where they cause a homicide malice shall be implied." In the case where these words were used, 49 *Ga.*, 211, by Chief Justice Warner, the deceased had put his hand upon his hip and said, " I will shoot, you son of a bitch, if you touch my woman." The most that can be said in this case is, that the witnesses would swear that McMullin said he had the best pistol that ever fired, and if you, mean. ing prisoner, don't like what I say, I'll blow your damned brains out, thrusting his hand into his breeches' pocket. It was but a threat with a gesture, just as stated in the case cited, and in which that eminent judge further said, "that this court will avail itself of the present occasion to an- nounce to the public from this bench, with all the empha- sis which its judgment can impart, that provocation by words. threats, menaces or contemptuous gestures, will in no case be sufficient to free a person who kills another by shooting him, from the guilt and crime of murder."

The third and last reason wherein this ground of newly discovered evidence is defective, is that : " It should be known, not .only who the witness is, but where he re- sides, what is his character, and who are some of his asso- ciates. He should be brought out, so to speak, and be exhibited in day-light. Affidavits should be adduced as to his character and credibility." This doctrine was laid down in the 55th *Ga.*, 702, and in the 56th *Ib.*, 405, and it is re- affirmed in this case.

There were other questions made in the motion for a new trial, but none that have sufficient merit to reverse the court below. Unfortunate as it is for the defendant, the record shows that he has been tried and condemned according to the law of the land, and painful as it is to this court to record it, that condemnation must stand affirmed.

Judgment affirmed.