## DICKENS v. THE STATE.

1. It is not error to overrule a plea in abatement to the indictment returned against one charged with murder, where the indictment is not only regular on its face, but where it appears that the foreman of the grand jury, and each member thereof who participated in the finding of the indictment, were regularly summoned and impaneled according to law, under the direction and approval of the presiding judge.

   (a)  The jury commissioners of each county are the proper judges of the qualifications of the citizens to be placed on the jury lists of the county.

   (b)  And where " all lawyers, ministers of tne Gospel, doctors, dentists, railroad engineers and firemen" are left off the jury lists of the county by the jury commissioners, it is no ground for a plea in abatement and challenge to the array in a criminal case.

2. On the call of the case against one charged with murder, a motion was made to continue it for the purpose of getting the evidence of an absent witness; and it appeared that the witness on account of whose absence the motion was made had died the night previous to the day the case was finally called for trial. *Held*, that it was not error to refuse a continuance.

3. A ground of a motion for a new trial not approved by the court below will not be considered.

4. An excerpt from the charge of the court on the subject of reasonable doubt, which does not contain an essential feature of the law on the subject, will not be held to require a new trial, where the general charge on the same subject, immediately preceding and following the excerpt, states the rule correctly, and the whole charge omitted from this ground of the motion for a new trial meets squarely the objection urged against the excerpt complained of.

5. Voluntary drunkenness is no excuse for crime.

6, 7. There was no error in the charges of the court as set out in the 6th and 7th divisions of the opinion, of which the defendant can rightly complain.

8. Where the charge of the court to the jury on a given subject is substantially correct, and a fuller charge is desired, a request therefor should be made.

9. The verdict is supported by the evidence.

FEBRUARY 13, 1912.

Indictment for murder. Before Judge Brand. Walton superior court. November 20, 1911.

*John R. Cooper* and *E. W. Roberts,* for plaintiff in error.

*T. S. Felder, attorney-general,* and *Clifford Walker, solicitor-general,* contra.

HILL, J. At Dickens was tried and convicted of murder and sentenced to life imprisonment in the penitentiary. A motion for a new trial being overruled, he excepted.

1.  Before arraignment the defendant filed a plea in. abatement to the indictment returned against him, and challenged the array, on the ground that the grand jury as first called consisted of twenty-three men, who were instructed by the court to retire from the court-room and elect a foreman.  They did retire and elected W. H. Nunnally foreman, and returned to the court-room.  The court then stated that since the jury had retired one of the absent jurors, Pleas Stanton, had come in; "wherefore W. H. Nunnally was stricken from the grand jury as foreman, and this juror was added to the list; and the grand jury was again, for the second time ordered to return to their room and elect another foreman, and therefore they returned to their room and elected John T. Robertson foreman of the grand jury, and when they returned to the court-room the jury was sworn by the solicitor-general, according to law."  In a note appended to this ground of the motion for a new trial, the presiding judge says: "W. H. Nunnally was never sworn in as a grand juror at said term of the court.  He was not sworn in as foreman of said grand jury.  He was not selected by the judge or court as such foreman.  He did not take the oath of office in either capacity.  When the twenty-three jurors being present answered, the judge instructed them to go to the jury-room and select a foreman.  As they returned from the jury-room, being in there only a minute or two, and before the jury had taken their seats and before any announcement was made that any one had been selected foreman, the sheriff publicly called the court's attention to the fact that Mr. Stanton, who did not at first respond to his name and who was on the venire of the grand jury, had just come into court.  The court thereupon asked Mr. Stanton if he had any excuse to render why he should not serve on the grand jury at that term of court.  He said he had none.  His name having been drawn and it appearing on the said list before said Nunnally's name, and the regular time of opening the court, according to custom on Monday morning, not having arrived by a few minutes, Mr. Stanton was instructed to take his place on the grand jury, he making twenty-three, thus excluding Nunnally, who made the twenty-third juror present before said Stanton came into court. The court then told the grand jury, with Nunnally off and Stanton on, to retire to the room and select a foreman, which they did, selecting said Robertson, as aforesaid, which selection was approved

by the court. All this occurred without any information on the judge's part from any grand juror or any source whatever that said Nunnally had been selected to act as foreman. Said Stanton's name was No. 6 on said list. Said Nunnally's name was No. 28 on said list. If said Stanton had been present and responded to his name when it was first called, the grand jury would have been impaneled and qualified exactly as it was subsequently impaneled and qualified, because it would have been thus completed before Nunnally's name was ever reached. Anything in said evidence above referred to, in conflict with this statement, is not true. Under these facts and circumstances the said plea in abatement was decided against the defendant." It is insisted that the indictment is illegal, for the following reasons: (1) Because it was found by an illegal grand jury not chosen according to law. (2) Because John T. Robertson was not the legal foreman of the grand jury, but W. H. Nunnally was the legal foreman duly elected by that body. (3) Because the court did not have authority to withdraw from the jury a duly elected foreman, W. H. Nunnally, without cause, and substitute another grand juror who had come in late, and trouble the body to elect another man. (4) Because the court should have put a fine upon the absent juror, if he had no legal excuse. (5) Because the jury commissioners arbitrarily excluded from the grand jury and the petit jury all lawyers, ministers of the Gospel, doctors, dentists, railroad engineers and firemen, there being ten or other large number of each class in the county, who were citizens and residents and possessed the qualifications required by law for grand jurors and petit jurors. "Defendant contends that the arbitrary exclusion of this class, without reference to their qualifications, was in violation of the statute and constitution of the State of Georgia, and especially that provision of the constitution which guarantees due process of law, and that it was violation of the 14th amendment of the constitution of the United States, as well as other provisions of that instrument, and had the effect of denying to the prisoner due process of law and the loyal protection of the law and alledged [abridged?] his privileges and immunities as citizens of the United States. The arbitrary exclusion of the class of citizens from the grand and petit jury is contrary to the constitution and laws of the land."

There was no error in deciding the plea in abatement against the defendant's contention on all the grounds stated therein. So far as the record discloses, the grand jury was legally organized. The jury had not been organized when Nunnally was withdrawn, and Stanton, who was regularly drawn as a grand juror, was substituted in his stead. The presiding judge did not know who had been selected as foreman when the juror Stanton was substituted for Nunnally. The oath had not been administered when the substitution was made. *Ridling* v. *State,* 56 *Ga.* 601 (1). This case is different from that of *Williams* v. *State,* 60 *Ga.* 88, cited by counsel for the plaintiff in error. There some of the jurors who found an indictment, regular on its face, were not regularly summoned and impaneled; and it was held a matter for plea and not for demurrer. But here the juror was regularly drawn, appeared in court in answer to the summons served upon him before the grand jury was organized, and took the oath as prescribed by law with the rest of the jurors. The presiding judge approved the selection of the new foreman; and we think that the jury was a legally organized grand jury, and that the indictment found by the grand jury, so organized, was a legal and valid indictment, so far as this ground of exception is concerned. The only other ground of the plea in abatement which needs to be considered is the 5th and last, the other grounds being without merit. The 5th ground of the plea in abatement alleges that the indictment is illegal, because the jury commissioners arbitrarily excluded from the grand jury and the petit jury "all lawyers, ministers of the Gospel, doctors, dentists, railroad engineers and firemen." It is insisted by the plaintiff in error that the exclusion of these classes of citizens from the jury box, without reference to their qualifications, was in violation of the statute and the constitution of the State, "which guarantees due process of law, and that it was also violation of the 14th amendment of the constitution of the United States, as well as other provisions of that instrument, and had the effect of denying to the prisoner due process of law and the loyal [equal] protection of the law," etc. We think this assignment is without merit. In the case of *Thomas* v. *State,* 67 *Ga.* 460, it was held: "The jury commissioners are the proper judges of the qualifications of citizens to be placed on the jury lists of the county. That witnesses sworn on the trial think that certain names should have been on the list,

and that few colored men were selected (the defendant being colored), is no ground for a challenge to the array in a criminal case." See also *Wilson* v. *State, 69 Ga.* 224 (3 *a, b*).

2.   The 4th ground of the motion assigns error on the part of the court in not granting a continuance of the case for the term. In a note to this ground of the motion the trial judge certifies that "It was shown to the court beyond doubt, and without denial, that the witness on account of whose absence the matter [motion?] to continue was based died the night previous to the day this case was finally called for trial." We do not see how it would be to the advantage of the defendant to continue his case on account of the absence of a witness who was shown to be dead, and hold, therefore, that it was not error for the court to overrule the motion to continue on that ground. It is insisted, in argument by the counsel for the plaintiff in error, that the continuance should have been granted, for the reason that counsel had been recently employed, and on account of the sudden death of the witness he was not prepared to go on with the trial. If such was the case, a motion on this ground should have been made, directed to the discretion of the court. In the absence of such motion the refusal of the continuance is no cause for a new trial. The motion, which was in writing, was based solely on the ground of the absence of the witness named, and "for the purpose of getting the evidence of this witness." Civil Code (1910), § 5724.

3.   The 5th ground of the motion for a new trial is not approved by the court, and will not be considered.

4.   Complaint is made of the judge's charge on the subject of reasonable doubt. The excerpt from the charge complained of is as follows: "A reasonable doubt is one that grows out of the testimony or from the absence of testimony, or a conflict in the testimony and the defendant's statement, and leaves the reasonable mind wavering and uncertain, not satisfied from the evidence. You can not create for yourself a doubt and act upon it; you can not raise an artificial or captious doubt in order to acquit." It is insisted, that the presiding judge committed error in charging the jury that if they had a reasonable doubt from a conflict of the evidence and the defendant's statement, they should acquit; as the jury would have a right to acquit if they had a doubt of his guilt from the defendant's statement alone, or from the State's evidence alone. The judge

did charge the jury that "if after a fair and impartial consideration of the entire case, including defendant's statement, a reasonable doubt exists, it is the duty of the jury to give the defendant the benefit of it and acquit him." Fairly construed, the charge as a whole was free from the criticism of it. The excerpt complained of gives only a portion of the charge on this subject. The record shows that the court gave the jury the following instructions: "A reasonable doubt is an actual doubt that you are conscious of after going over in your own minds the entire case, giving consideration to all the testimony and every part of it. If you then feel uncertain and not fully convinced that the defendant is guilty, and believe that you are acting in a reasonable manner, and if you believe that a reasonable man in any matter of like importance would hesitate to act because of such a doubt as you are conscious of having, that is a reasonable doubt, of which the defendant is entitled to have the benefit. It is essential to a verdict of condemnation that the guilt of the accused shall be fully proved. Neither a mere preponderance of evidence nor any weight of preponderant evidence is sufficient unless it generates full belief of the fact to the exclusion of a reasonable doubt. A reasonable doubt is one that grows out of the testimony, or from the absence of testimony, or a conflict in the testimony and the defendant's statement, and leaves the reasonable mind wavering and uncertain, not satisfied from the evidence. You can not create for yourself a doubt and act upon it; you can not raise an artificial or captious doubt in order to acquit. The doubt should be real and honestly and fairly entertained after all reasonable efforts to find out the facts. And if after a fair and impartial consideration of the entire case, including defendant's statement, a reasonable doubt exists, it is the duty of the jury to give the defendant the benefit of it and acquit him. If, however, you are satisfied of his guilt to the exclusion of such a doubt as this, it would be your duty to convict."

5. Another ground of alleged error is because of the judge's charge on the subject of drunkenness, which was as follows: "On the subject of drunkenness, I charge you that drunkenness is no excuse for crime. One who voluntarily and in testimony [intentionally] kills must meet the demands of the law with some other excuse than that of drunkenness. To be too drunk to form the intent to kill, the slayer must be too drunk to form the intent to

shoot. Still, I charge you that if the defendant was drunk when he fired the fatal shot which took the life of Roseberry, you may consider this, like any other fact, to illustrate his intent and motive and otherwise to shed light upon the transaction." In a note appended to this ground of the motion, the judge trying the case says: "The sole defense was self-defense, and justifiable homicide under the distress of the fears of a reasonable man, and accident. The statement shows these defenses were set up, and in addition in this statement the defendant denied that he was drunk, and the evidence on the part of the State fails to show that he was drunk, —that he had taken a couple of drinks before the killing." The brief of evidence sustains the judge in the note just quoted, with reference to the testimony and the statement of the accused. Nor do we think the charge complained of was erroneous as against the defendant, especially in view of the statement of the defendant himself, who claimed that he was not drunk. If the charge complained of was not full enough, a request should have been made for a fuller charge on the subject, if the facts authorized it. But conceding for the sake of the argument that the defendant was drunk at the time of the homicide (which is not borne out by the evidence), this court has often held that voluntary drunkenness is no excuse for crime. *Estes* v. *State*, 55 *Ga.* 30 (1-3); Penal Code (1910), § 39; *Mitchell* v. *State*, 59 *Ga.* 154; *Moon* v. *State*, 68 *Ga.* 687 (6); *Hanvey* v. *State*, 68 *Ga.* 612 (2); *Beck* v. *State*, 76 *Ga.* 452 (1); *McCook* v. *State*, 91 *Ga.* 740 (17 S. E. 1019); *Cribb* v. *State*, 118 *Ga.* 316 (45 S. E. 396).

6. The following charge of the court, under the circumstances of this case, was not error as against the defendant; "Malice is excluded if the intention to kill grows out of hot blood produced by provocation other than that induced by mere words, threats, menaces or contemptuous gestures. If the provocation be produced by an actual assault, by an attempt to commit a serious personal injury upon the person killing, or by other equivalent circumstances, calculated to excite sudden passion, the fact that the defendant shot with the intention to kill would not render the offense that of murder. But if the killing occurred under such circumstances and was unlawful, the slayer is guilty of voluntary manslaughter." *Pryer* v. *State*, 128 *Ga.* 29 (57 S. E. 93); *Bird* v. *State*, 128 *Ga.* 253 (57 S. E. 320). See also *Adkins* v. *State*,

34

137 *Ga.* 81 (72 S. E. 898), where it was said that "the doctrine of reasonable fear has no connection with the offense of voluntary manslaughter." That portion of the charge excepted to in this case was on the subject of voluntary manslaughter, and, under the ruling just cited, the contention of counsel for the plaintiff in error is not sound.

7. It was not error for the court to charge the jury: "The doctrine of reasonable fears only applies when the danger is urgent and pressing or apparently so at the time of the killing;" and especially where it appears that just before the charge excepted to the court had charged the jury that "The defendant is not required to demonstrate that a felony was about to be committed upon him or that his life was in danger. He is only required to show that the circumstances as they appeared to him at the time were sufficient to make him so believe."

8. If the defendant desired a fuller charge than that complained of in the 10th ground of the motion, on the subject of a mutual intent to fight, it was his duty to request further instructions. We may remark, however, that a mutual intent to fight does not necessarily reduce the crime from murder to manslaughter. In order to do so, "The killing must be the result of that sudden, violent impulse of passion supposed to be irresistible; for if there should have been an interval between the assault or provocation given and the homicide, of which the jury in all cases shall be the judges, sufficient for the voice of reason and humanity to be heard, the killing shall be attributed to deliberate revenge, and be punished as murder." Penal Code (1910), § 65.

9. There was abundant evidence upon which the jury could have found the defendant guilty of murder. We think, from a careful reading of it, that the evidence supported a verdict of guilty as alleged in the indictment; and as the presiding judge is satisfied with it, we will not disturb the finding of the jury.

*Judgment affirmed. All the Justices concur.*