11906.    BONNER v. THE STATE.

BLOODWORTH, J. 1. Under the facts of this case the court did not err in charging on circumstantial evidence.

2. The judge did not express or intimate his opinion as to "what has or has not been proved, or as to the guilt of the accused," by instructing the jury that they "would be authorized to convict him whether such conviction depended upon direct or circumstantial evidence in the case, provided you are satisfied of his guilt beyond a reasonable doubt."

3. A correct principle of law is stated in the following excerpt from the charge: "In order to convict the defendant of the offense of assault with intent to murder, all the elements of murder would have to enter into the transaction except the death of the person alleged to have been assaulted, and therefore it becomes my duty to instruct you what constitutes murder under the laws of the State of Georgia."

4. Under the laws of Georgia voluntary drunkenness is no excuse for crime. Penal Code (1910), § 39. "That voluntary drunkenness shall not be an excuse for crime is the written law of this State, and the sooner that it is recognized and observed, the better it will be for all over whom it is to be enforced. One who voluntarily kills must meet the demands of justice and of law with some other excuse than that of drunkenness. In the language of Judge Bleckley in *Marshall* v. *State*, 59 *Ga.* 154, ' To be too drunk to form the intent to kill, the slayer must be too drunk to form the intent to shoot.' " *Hanvey* v. *State*, 68 *Ga.* 614 (2). See also *Estes* v. *State*, 55 *Ga.* 30, 31; *Dickens* v. *State*, 137 *Ga.* 523 (5), 528 (5), and cases cited on page 529 (73 S. E. 826).

5. There is no error in the excerpt from the charge quoted in the 4th ground of the amendment to the motion for a new trial.

6. Under the facts of this case the judge, in the absence of a proper and timely written request, did not err in failing to charge "the law of alibi." "The evidence in support of the defense of alibi was not of such clear and strong probative value as to require from the court an instruction on the law of alibi, especially in the absence of a timely written request." *Paulk* v. *State*, 8 *Ga. App.* 704 (2) (70 S. E. 50); *Throckmorton* v. *State*, 23 *Ga. App.* 112 (97 S. E. 664).

7. The evidence authorized the verdict.

*Judgment affirmed. Broyles, C. J., and Luke, J., concur.*

DECIDED JANUARY 25, 1921.

Conviction of assault with intent to murder; from Baldwin superior court — Judge Park. September 29, 1920.

On the ground that "there was no evidence to show that the weapon was a weapon likely to produce death," and no evidence that the defendant shot at the prosecutor, the defendant excepted to instructions referred to in paragraph 5 of the decision, which were to the effect that the jury would be authorized to convict the defendant if he discharged a certain gun or pistol at the prosecutor, and if the weapon was a weapon likely to produce death, etc.

According to the prosecutor's testimony, on a dark, rainy night he saw the defendant Bonner leave the house occupied by Bonner as his farm tenant and come to the yard of his own residence, a distance of about 200 yards. There was a light in Bonner's door, and the prosecutor could see him in that light and in flashes of lightning. He seemed to have been drinking, and was cursing and threatening to kill the prosecutor, and on the way he shot a pistol several times. Nobody was with him at first. The prosecutor, after hearing Bonner's gun cock, about 30

or 40 yards away, in the prosecutor's yard, went into his house. Bonner was cursing when he came into the yard, and the prosecutor called to him to "cut that out." The prosecutor testified: "After I called to him and told him to cut that out, he cursed every sort of curse word. He just said, ' God damn, I have been wanting him to say something so I could kill him.' I was inside of my hall door when I heard him. . . John Luckie [joint defendant] came on the scene of things after everything had quieted down. This negro came to the front steps, and I was standing at the front door, looking through the side light of the door, and he called me three times. Both of these negroes were standing there, — Edgar Bonner and John Luckie. I never replied. I suppose John had a shotgun. Bonner had something like a rifle, besides his pistol. I would say that he shot ten or twelve shots after he came to my house. One of the bullets hit the corner of my house. That was when he was coming when that bullet hit; and later he called to me. I could see him as plain as anything. They thought may be I had gone out, and they laid out there for me to come out of the door, so they could shoot me. . . I am satisfied that they fired a shotgun, pistol and rifle was all fired by one or both of them. Bonner had a 44 pistol, a Winchester rifle, and a shotgun." The prosecutor had sent Mose Myrick to neighbors for help, and, when Myrick returned with others, Bonner said to Myrick, " Where in the hell have you been? You have been to Bob Watson's. We will kill him and you too." And John Luckie said, " We will sure kill you." The prosecutor testified that before that time he " had had no trouble with Bonner to amount to anything. Sometimes he would get out of his place." The sheriff testified that on the night when the prosecutor and Bonner " had trouble at his house," he heard Bonner " shoot up there at his house twice; . . it wasn't a shotgun,—either a pistol or rifle; it shot a hole in his door. I don't know whether his shots done it or not. . . The holes looked like they were made by a 44." Several witnesses testified that Bonner was drunk that night. His statement at the trial was as follows: " I was drunk and don't know when I got home. I remember shooting twice, but I didn't go to Mr. Watson. I never left my house. I did not

hang around Mr. Watson's house or do any shooting. I shot twice at home."

*John R. Cooper, W. O. Cooper Jr., T. D. Luther,* for plaintiff in error.

*Doyle Campbell, solicitor-general, A. Y. Clement,* contra.