Gann *vs.* The State of Georgia.

## GANN *vs.* THE STATE OF GEORGIA.

1. Whenever the homicide is the result of that sudden and violent heat of passion, which is supposed to be irresistible, and without any malice or deliberation, the killing is voluntary manslaughter, and not murder.

2. If, upon a sudden quarrel, the parties fight upon the spot, or presently agree and fetch their weapons and fight, and one of them is killed, such killing is but voluntary manslaugher, no matter who strikes the first blow.

Murder, in Cobb Superior Court. Tried before Judge RICE, at September Term, 1859.

This was an indictment against Jeptha Gann, charging him with the murder of William Collins.

It was shown by the proof, that: On the 23d day of April, 1859, in the county of Cobb, the deceased, the prisoner, John Oshields, Joseph White, Alexander Cupp, Nancy Scoggins, and Fanny Scoggins, were all on their way home from Marietta; that, as they went along, deceased and Nancy Scoggins fell out; that deceased commenced blackguarding Nancy Scoggins with vulgar language, which was the first beginning of any difficulty; that the blackguarding of Nancy Scoggins, by the deceased, made the prisoner mad; prisoner was in company with Nancy Scoggins; that prisoner cursed deceased, and wanted to fight him; that when the prisoner said he would whip deceased, if he did not mind, deceased replied that that was as good a time, he reckoned, as he would ever get; that the altercation then ceased, and the parties made friends, and drank together at Gault's grocery, the prisoner buying the liquor; that the prisoner and his immediate company, consisting of Nancy Scoggins, Fanny Scoggins, and Alexander Cupp, left the grocery first, and started on home; that after they had gone on some little distance, the deceased, Oshields, and White, also left the grocery, and went on towards home, along the same road; that after going along, and getting near to Mr. Hunton's, the deceased and Oshields began to sing a song about the Fillmore boys; that the words of the song seemed to be harmless, but the manner of singing the song, or something else, offended Nancy Scoggins, who had a child named Fillmore; that the

deceased and Oshields were told by prisoner that if they wanted to sing, either to stay behind or go on before; that deceased, Oshields, and White then passed by prisoner and the Scogginses, and again commenced singing the song; that prisoner again cursed them, saying that any man who would sing such a song as that before decent women was of no account, and that he was the best man that ever made a track on Marietta hill, and could whip any Collins or Oshields of the name; that deceased replied, " No you can't—you can't whip Scott Oshields," to which prisoner rejoined, " Yes I can ; I can whip him the best day he ever saw ;" that Oshields and deceased were told not to sing any more or say anything else to prisoner, as he was drunk and did not know what he was doing; that in going about seventy-five yards, White and Oshields got before the deceased about thirty steps ; that when about that distance ahead, they rather stopped, and heard three licks back behind them ; that they turned and went back and found deceased retreating from prisoner whilst prisoner was advancing on deceased ; prisoner had something in his hand that looked bright; that it was dark, and the prisoner was drunk, and the deceased was sober ; that when White and Oshields got back to the place of rencounter, deceased said that prisoner had cut him badly, to which prisoner replied, " Yes, and I am sorry for it ;" that White caught hold of deceased by one arm and Oshields took him by the other, asking him if he was sick, and when asked the second time, replied that he was, and began to sink down ; White and Oshields then let him down in the lock of the fence, and he died in a short time; White and Oshields heard the blood spouting, or bubbling, from his wound; that when deceased was caught by White and Oshields, he had an open knife in his right hand, which one of the witnesses took from his hand and put it into the witness' pocket ; that prisoner had a double-barrel shot gun, which Nancy Scoggins was carrying at the time ; prisoner also had a pistol, but the evidence did not show that he was carrying the gun or pistol with any reference to deceased, or that he drew or attempted to use either of them against deceased, except that one of the witnesses testified that after deceased had been let down in the lock of the fence, prisoner said to deceased, not to crowd him, or rush on him, for he had his repeater drawn ; deceased was stabbed on the shoulder, under the collar bone, with a

knife, and the wound caused his death; that prisoner had the knife shown in Court on the night of the difficulty—it is called a Spanish dirk, but is not above the size of a pocket knife, and shuts up, and is carried in the pocket. On the night of the homicide the prisoner was arrested at a house in or near the Camp Ground, and when arrested, was in bed with Nancy Scoggins, who is an unmarried woman, and Alexander Cupp, all three being asleep in the same bed; that blood was seen on the under-dress of Nancy Scoggins, who said it got on her dress as she stooped down to see if deceased was dead; that prisoner was, when arrested, searched for weapons and none were found on him; the coat-sleeve and the arm of prisoner was cut with a knife, and there was also a cut on the left breast of his coat; that from the place where White and Oshields heard the three licks down to the place where they took hold of deceased when they went back, there was blood along on the ground; that there was but one wound of any importance on deceased; that during the altercation between prisoner and deceased, about whipping Scott Oshields, prisoner said, "O, God damn you, Dorse, here I come;" there was a pistol, and the knife aforesaid, found next day at the place of rencounter, both of which were shown to belong to prisoner; the knife which was taken from deceased, was shown in Court, and identified as his.

The jury found the defendant guilty.

Defendant, by his counsel, moved the Court for a new trial in said case, on the grounds:

1. Because the finding of the jury was contrary to the evidence in said case.

2. Because the finding of the jury was contrary to law.

3. Because the jury found a verdict in said case which was decidedly and strongly against the weight of the evidence in said case.

4. Because after the Court, in compliance with the request of defendant's counsel, had charged the jury that, "whilst voluntary drunkenness is no excuse for crime, yet the drunkenness of the defendant, at the time of the killing, may be considered on the question whether the defendant was excited by passion, or actuated by malice in committing the homicide." Qualified said charge by adding thereto the following, to-wit: "In case it is proven that any such provocation was given, as the Court has already mentioned, that is a pro-

vocation not by words, threats, menaces, or contemptuous gestures alone, whether said or sung, but an actual assault upon the person killing, or an attempt by the person killed to commit a serious personal injury on the person killing." In connection with this, the presiding Judge further certifies, that he charged the jury that, " in all cases of voluntary manslaughter, there must be some actual assault upon the person killing by the person killed, or an attempt by the person killed to commit a serious personal injury on the person killing."

5. Because after the Court, at the request of the defendant's counsel, had charged the jury as follows : " If you believe from the evidence, that, at the time Gann killed the deceased, the deceased had a knife drawn, and was cutting at Gann, or attempting to cut or stab him, and that Gann killed deceased to save his own life, or killed deceased under the influence of a reasonable fear that deceased would kill him, or inflict upon him serious bodily harm, or was trying to kill him at the time, then the defendant Gann is not guilty of murder, and you ought not to find him guilty of murder." Qualified said charge by adding thereto the following, to-wit : " But if the prisoner first advanced on, and assaulted the deceased with a knife, or other deadly weapon, then the deceased might defend himself, and if, in defending himself, he cut the clothes, or even the person of the prisoner, that would not justify the prisoner for killing deceased, unless the prisoner had, after he assaulted deceased, really, and in good faith, endeavored to decline any further struggle before he struck the mortal blow, and that, at the time he struck the mortal blow, the danger to himself was so urgent and pressing, that in order to save his own life, he killed deceased," as such addition and qualification were illegal and unwarranted, and unsupported by the evidence.

6. Because the Court erred in admitting in evidence, over the objections of prisoner's counsel, where and with whom Nancy Scoggins slept, and where and with whom the prisoner slept, on the night of the alleged murder, and after it had occurred, as such evidence was illegal, irrelevant, and calculated to prejudice the jury against the defendant for vices, immoralities, and indecent conduct, having no connection with his guilt or innocence of the alleged murder.

The motion was overruled, and the new trial refused, and defendant excepted, and assigns the same as error.

IRWIN and LESTER, for plaintiff in error.

WM. PHILLIPS, Solicitor General, *contra.*

*By the Court.*—LYON, J., delivering the opinion.

The Court having charged the jury that, " In all cases of voluntary manslaughter, there must be some actual assault upon the person killing by the person killed, or an attempt by the person killed, to commit a serious personal injury on the person killing," and then, after giving a charge as requested by counsel for prisoner, qualified such charge thus : " In case it is proven that any such provocation was given as the Court has already mentioned, that is, a provocation, not by words, threats, menaces, or contemptuous gestures, whether said or sung, but an actual assault upon the person killing, or an attempt by the person killed, to commit a serious personal injury on the person killing." This charge, when considered with reference to the facts of this case, is erroneous.

The Court was evidently impressed with the idea that the only thing which, under our statute, could reduce a homicide from murder to voluntary manslaughter, was an actual assault upon the person killing, or an attempt by the person killed to commit a serious personal injury on the person killing, and such is the letter of the statute on this subject, but there is more in the statute besides that. The statute says in another place, that " the killing must be the result of that sudden, violent impulse of passion, supposed to be irrisistible, and that is the general principle distinguishing voluntary manslaughter from murder rather than that enunciated by the Court. Whenever the killing results from such passion alone, and not from any mixture of malice or deliberation, then the killing is not murder, but is voluntary manslaughter, no matter how that passion may be aroused, for if there is no malice either expressed or implied, or criminal neglect, there can be no murder. The clause of the statute given by the Court to the jury to control them in passing on the facts of this case applies to that class of cases, and was so intended by the Legislature, where the only excuse for the killing was the provocation given by deceased to accused. Not to those cases, however, when the provocation given is of such a char-

Gann *vs.* The State of Georgia.

acter that it so excites the slayer with such great and sudden heat of passion, that he cannot resist its influence, and when the killing is caused by such passion, and not solely on account of the provocation given.   Any other construction of this statute would leave a large number of cases of homicide unprovided for, which are neither murder, involuntarily manslaughter, or justifiable.

2.  From all that we can see of the facts of this killing, as disclosed by the evidence, these parties, that is, the deceased and the accused, went into the fight mutually, upon equal terms, each having and using a knife upon a sudden heat of passion, caused by the provocation given by deceased, and their almost immediate collision, and that the killing was the result of this mutual fight and sudden heat of passion rather than of the provocation.   Now, if this was the fact, the killing was voluntary manslaughter and not murder, and so the Court ought to have charged the jury.   Instead of this, the charge as given, taken altogether, excludes such a principle from the consideration of the jury.

We find the principle thus broadly laid down :  " If A and B fall suddenly out, and they presently agree to fight in the field, and run and fetch their weapons, and go into the field and fight, and A kills B, this is not murder, but homicide," (manslaughter.)  1 *Hale, P. C.,* 453.   " If, upon a sudden quarrel, the parties fight upon the spot, or if they presently fetch their weapons and go into the field and fight, and one of them falleth, it will be but manslaughter."   1 *Hawkins,* 31, *sec.* 22, 29.   4 *Blk. Com.,* 191.   " Upon words of reproach, or any sudden provocation, the parties come to blows, and a combat ensues, no undue advantage being sought or taken on either side, and death ensues under such circumstances, the offense of the party killing will amount only to manslaughter." 1 *Russ. on Crim.,* 585, refers to *Fost.,* 285.

" If two draw their swords upon a sudden quarrel, and one kills the other, it is only manslaughter."   1 *Russ. on Crim.,* 586, refers to *Rex vs. Walters,* 12 *St. W.,* 113, and in such case it is immaterial who strikes the first blow.

Could a principle be clearer or better settled ?   And it in no wise conflicts with our statute, but is in full accordance with its very letter and spirit.   " Manslaughter," says the statute, " is the unlawful killing, etc., without malice, without deliberation, which may be voluntary UPON SUDDEN HEAT OF

Gann *vs.* The State of Georgia.

PASSION, or involuntarily," etc., and again, " the killing must be the result of that *sudden, violent impulse of passion,*" *etc.*

Apply this principle to the facts of this case.  Deceased and his friends were traveling faster than accused and *his* crowd—for he was behind—had overtaken and passed them some twenty or thirty steps, when he renewed the singing that was so offensive to the prisoner.  Prisoner cursed deceased, and said " he could whip any Oshields or *Collins* of the name."  Deceased denied this ;  he was willing for the fight, and had been from the first of the difficulty, and instead of going on with his companions, as he had been previously, he stops in the road and waits for accused to come up with him, and then the fight commences, each having and using his knife—blows and wounds are given and received, and no one knows who is the aggressor.  The result is, that the prisoner in the fight kills Collins, the deceased, by a stab with his knife.  Now, it is manifest that he did not kill Collins solely on account of the provocation, because at that time, the distance between them was some twenty or thirty steps, and prisoner had a repeater and double-barrel gun, and used neither to revenge the affront, which it is likely he would have done, had it been his purpose to kill deceased for the provocation.  Had he done so in that way, his crime would have been murder.  The provocation would have been no excuse.  But he does no such thing ; on the contrary, when he, in his anger, comes up, and in collision with deceased, who was awaiting him for that purpose, in the dark, they engage with each other in a mutual fight, on equal terms. Now, it is clear that such killing, if we have the facts aright, under the rule stated, is not murder, but manslaughter, and so the Court ought to have charged the jury, and so should have been their finding; and as the Court did not so charge, nor the jury so find, we reverse the judgment of the Court below, and send the case back for a new trial.

There is nothing else in the rulings of the Court that is necessary for us to pass upon.

Judgment reversed. .