### 4487. PLATT v. THE STATE.

RUSSELL, J.  Neither under the evidence for the State nor in the prisoner's
statement was there any theory upon which a verdict of voluntary
manslaughter could be sustained.                    *Judgment reversed.*

DECIDED APRIL 2, 1913.

Indictment for murder—conviction of voluntary manslaughter;
from Thomas superior court—Judge Thomas.    September 28,
1912.

The .accused killed George Hurst, the husband of his sister.
She was the only witness.  She testified, that, while she was sit-
ting on her husband's lap, he became angry and said he was going
to kill himself by cutting his head off.  He was drunk or had been
drinking.  He got his knife out and opened it, and she tried to
get away from him, and screamed for her brother (the accused),
who was in another room, asleep, to come and help her.  Her
brother got up from the bed, after she had been screaming a minute
or two, and started towards them with an open pocket-knife.
She then ran to her brother to keep him from getting to her hus-
band, and had her arms around him, but he got loose from .her
and ran in the kitchen where her husband was, she following, cry-
ing and screaming for them to stop; and her husband begged him
to stop, and asked if he did not see the condition she was in, and
said, "You are going to kill her."  Her brother said, "You God
damned son of a bitch, you are trying to scare her to death;"
and as he said this he stabbed her husband once in the left side of
the head, just above the temple, with his pocket-knife.  She had
told her brother, while he was going towards her husband, that her
husband was' trying to kill himself.  Her husband, at the time
of the stabbing, was not doing anything to her; he "was not doing
anything except standing by the side of the table with his knife
in his hands," and he said to her, "Please stop it."  "It all hap-
pened as quick as lightning."  When stabbed he staggered to his
gun, shot a hole in the floor, and shot .her brother once.  He was
killed by the stab, but survived it for several days.  Several hours
before the stabbing her husband asked her to lie on the bed by him,
and, after lying there awhile, she said she was going to get up and
wash the dishes, and he said to her that she need not be in a hurry,
that one or the other of them would die before things were cleaned
up.  At that time he had not been drinking and her brother was

not there. When her brother came her husband carried him to the smoke-house to get something to drink, and he had been drinking before the stabbing. Several months before the killing her husband had struck her with a stick. He had slapped her at other times.

The defendant's statement to the jury was as follows: "I was lying down on the bed and my sister screamed for me, and I got up and ran in there to her. I got in there and she had him (the deceased) by the left arm. He was saying he was going to kill her. I ran in and stabbed him. He swore he was going to kill her, and as I stabbed him she jerked loose. I went out at one door, he went out at the other. He ran in the house and shot me."

The court, in charging the jury, instructed them on the law relating to voluntary manslaughter; and in the motion for a new trial it is contended that this was error, because "if the evidence for the State be true, there could be no conviction except for murder; and if the statement of the defendant be true, the only possible verdict would be justifiable homicide."

*W. H. Hammond, Roscoe Luke, Louis Moore,* for plaintiff in error, cited *Owens* v. *State*, 120 *Ga.* 205.

*J. A. Wilkes, solicitor-general,* contra, cited: *Gann* v. *State*, 30 *Ga.* 67; *McDuffie* v. *State*, 90 *Ga.* 787; *Caruthes* v. *State*, 95 *Ga.* 343.