MIMS *v.* THE STATE.

No. 12962.   SEPTEMBER 15, 1939.

*J. W. Barnett, T. Coleman Bloodworth, O. M. Duke,* and *Benjamin B. Garland,* for plaintiff in error.

*Ellis G. Arnall, attorney-general, Charles H. Garrett, solicitor-general, E. J. Clower* and *Duke Davis, assistant attorneys-general,* contra.

JENKINS, Justice. Will Mims was found guilty without a recommendation, of the murder of Dave F. Mitchell. The testimony for the State showed that the defendant and a woman with whom he had been living engaged in an argument in a city street; that the deceased said something as to the defendant cursing on the street; and after some altercation in which the hat of the defendant was

knocked off, the deceased went down the street, and the defendant followed him. The defendant was under the influence of liquor, and there was some evidence to indicate that the deceased was in a similar condition. After reaching a point down the street about a block distant, the deceased told a witness that a negro had hit him and knocked his hat off, and asked the witness where he could find or call the police. The witness advised him to go home; and the deceased turned back up the street until he reached a bridge, about three quarters of a block from where the trouble began. The route that he thus took was on the way to his home; and there was no evidence that he knew the defendant was following him, or that he knew he would meet the defendant again. The defendant and the deceased met at the bridge, where the defendant inflicted upon him a mortal wound with a knife. According to the evidence of another witness, the defendant "picked up the hat [of the deceased] and slung it, and went on down the street behind this white man, and at the bridge they tied up. [He] grabbed the white man. [The woman] went down there, and [the defendant] flung her loose from him. They tussled around about a minute or a half, and I heard him [the deceased] holler 'Oh lordy' twice. . . It looked like they grabbed each other, hugging, to me." The deceased fell, stabbed in the neck, and soon died. Another witness testified on direct examination that the defendant had something shiny in his hand, a razor or pocket-knife, and threatened to cut the throat of the woman with whom he had been quarreling; that against her protest he went down the street in the direction in which the deceased was going, and "he caught up with the white man, and I saw him get in the road, and he was doing like that—hitting,— and after a while the white man turned and hollered. . . He was nearer the right side of [the] street where they were tussling, and when he said 'Oh lordy' he was going in that direction. I could see the white man's hands going up like that." There was no evidence as to any weapon being found on or near the deceased; and no evidence that he was armed. On cross-examination, the last-mentioned witness testified: "I don't know how the fight started. . . They were tied up; just doing like that—fighting. It started when [the defendant] went down there, and when he got down there he walked right side of the bridge, and they stepped back in the road, and they went to throwing up their hands. He

stepped out of the road and stepped right back in the road. They were in the road tied up when I saw the white man the next time. They were fighting."

In his statement to the jury, the defendant said that before the cutting he and the deceased were "fighting," that he did not know who struck first, "but I know our hands went up together."

■ The court did not abuse its discretion in refusing a continuance to the defendant on account of the absence of a subpœnaed witness, where at the hearing on the motion the defendant testified, "I don't really need her as a witness," and where it appeared only that the witness had left the county and gone somewhere in Atlanta, without any information as to where and when she could be found. See *Power* v. *State*, 8 *Ga. App.* 408 (2) (69 S. E. 315).

■ "When improper argument to the jury is made by an attorney for one of the parties, it is necessary, in order to make the same a basis for review, that opposing counsel should make objection to such argument or invoke some ruling or instruction with reference thereto by the court," although "it is not essential that a motion for mistrial should be made." *Brooks* v. *State*, 183 *Ga.* 466 (188 S. E. 711, 108 A. L. R. 752); *Benton* v. *State*, 185 *Ga.* 254, 257 (194 S. E. 166). Accordingly, it was not error to refuse a new trial on the ground that the solicitor-general improperly referred in his argument to an alleged confession made by the defendant in a hearing on his motion for continuance, but not introduced in evidence. For similiar reasons, it was not error to refuse a new trial because of questions by the solicitor-general, to which no objection was made, where in questioning two witnesses he referred to the defendant by the alleged prejudicial nicknames of "Whiskey" and "Rags."

■ The court did not err, in the absence of a request, in failing to charge the jury on the law of confessions, where the alleged statement of the defendant as testified by the witness did not contain "every essential element necessary to make out the case" against the defendant, and therefore showed at most only an inculpatory admission rather than a confession (*Allen* v. *State*, 187 *Ga.* 178 (3), 181, 200 S. E. 109; *Owens* v. *State*, 120 *Ga.* 296, 48 S. E. 21; *Clarke* v. *State*, 165 *Ga.* 326, 140 S. E. 889; *Powers* v. *State*, 172 *Ga.* 1, 157 S. E. 195; *Daniel* v. *State*, 187 *Ga.* 411, 413, 1 S. E. 2d, 6); and where, even if the statement had amounted to a confession, there was sufficient independent evidence to sustain

the conviction. *Allen* v. *State,* supra; *Sellers* v. *State,* 99 *Ga.* 212 (25 S. E. 178) ; *Gore* v. *State,* 162 *Ga.* 267 (3), 273 (134 S. E. 36).

■ Under a proper interpretation of the Code, § 27-2301, that "on the trial of all criminal cases *the jury shall be the judges of the law and the facts,*" it is "the province of the court to construe the law applicable in the trial, . . and of the jury to apply the law so construed to the facts in evidence;" and "while the . . jurors are made absolutely and exclusively judges of the facts in the case, they are in this sense only judges of the law." *Berry* v. *State,* 105 *Ga.* 683, 685 (31 S. E. 592) ; *Johnson* v. *State,* 118 *Ga.* 780 (45 S. E. 604). "The jury must accept as the law what the court charges them as being the law." *Rouse* v. *State,* 136 *Ga.* 356 (6), 365 (71 S. E. 667). Therefore the following instruction was not subject to exception on the ground that it invaded the province of the jury as judges of the law and the facts : "The court is responsible to you, to the defendant, to the State, to society, to a proper administration of public justice, for a correct interpretation of the law of the case. You take the law of the case from the court, and applying that law to the facts, as you find the facts to be, you reach a conclusion speaking the truth of the case molded into a verdict."

■ Exception is taken to a refusal to give the following requested charge : "There may be a state of facts where the evidence, under the law, would demand a conviction of the crime of murder; but under our law, where the punishment to be inflicted for murder is left to the discretion of the jury, under no circumstances can this court say that the evidence demanded a general verdict of guilty which must be followed by the infliction of the death penalty." Whether or not the language as to what the *"court"* might *"say"* was a proper statement of the rule leaving to the jury the question whether the punishment for murder shall be death or life imprisonment, the court did not err in refusing the request, since such rule as to the power of the jury was more fully covered by the following instruction : The recommendation of the defendant to the mercy of the court "is a recommendation which you have a right to make and attach to your verdict, in the event you should find the defendant guilty of murder. You may make this recommendation with or without a reason, and you may decline to do so with or without a reason ; you may do so as a matter of public policy or out of sym-

pathy for the prisoner, or you may decline to do so for reason of public policy or on account of absence of sympathy for the accused. The granting of it in case of conviction is a mere matter of grace that comes after guilt is established. The Code leaves it in the discretion of the jury as to whether they will recommend imprisonment for life in the penitentiary of a person convicted of murder; they are not limited or circumscribed in any respect whatever, nor does the law prescribe any rule by which the jury may or ought to exercise this discretion. In the event you find the defendant guilty of murder and wish to recommend him to the mercy of the court, the form of that verdict would be, 'We, the jury, find the defendant guilty and recommend him to the mercy of the court.' That would mean he would be sentenced to the penitentiary for and during the term of his natural life." See, as to the power of the jury, *Hill* v. *State*, 72 *Ga.* 131; *Wheat* v. *State*, 187 *Ga.* 480 (3) (1 S. E. 2d, 1) , and cit.

■ There is no merit in the ground that there was a substantial variance between the probata and allegata, on the contention that the defendant was indicted for the murder of "Dove F. Mitchell," while the proof showed that the name of the deceased was "Dave F. Mitchell," since the indictment itself, as disclosed by the record, alleges such name as "Dave F. Mitchell."

■ While there was some testimony that the deceased, who was unarmed, endeavored to defend himself with his hands from the mortal wound which the defendant inflicted upon him with a knife, all of the evidence showed that the defendant, after first striking the deceased, followed him down the street, and, after overtaking, killed him; and there was no evidence to indicate that the deceased knowingly approached the defendant after the first difficulty, or manifested any intention to fight, so as to render applicable the law of mutual combat as applied to voluntary manslaughter. Therefore the court did not err in omitting to charge this principle in connection with the charge on voluntary manslaughter. Nor did the statement of the defendant contain anything which would render such a charge applicable, even if there had been a request for such a charge, which was not presented. On this point the case differs in its facts from *Bailey* v. *State*, 148 *Ga.* 401 (96 S. E. 862), where it was shown that the deceased struck the first blow. See also *Brannon* v. *State*, 188 *Ga.* 15 (2 S. E. 2d, 654).

*Judgment affirmed. All the Justices concur.*