JOYNER *v.* THE STATE.

No. 17544.   Submitted September 10, 1951—Decided October 10, 1951.

*Alexander S. Boone Jr.,* and *Victor Davidson,* for plaintiff in error.

*Eugene Cook, Attorney-General, C. S. Baldwin Jr., Solicitor-General,* and *R. L. Addleton, Assistant Attorney-General,* contra.

CANDLER, Justice. Charlie Joyner Jr. was indicted and convicted, in the Superior Court of Wilkinson County, of the murder of Clinton Taylor. The jury recommended mercy and he was sentenced to life imprisonment. His motion for a new trial, as amended, was overruled and he excepted. All of those present at the time of the homicide testified as witnesses for the State, and their evidence in substance shows: The accused and the deceased met and were together at a store in Irwinton during the afternoon of December 10, 1950. They were joking or teasing each other about something concerning pine or broom straw. Their joking or teasing culminated in an argument

between them, during the course of which the deceased called the accused a damn liar. The accused started out of the store and told the deceased not to repeat what he had just said. The deceased followed the accused a few feet to the front door of the store and again called him a damn liar. At that time the accused slapped the deceased and left the store. After the accused left and on finding that he did not have his knife, the deceased looked for a pistol at the place in the store where the owner usually kept one, but found none. Jim Bell's unloaded shotgun was in the store, and one of the witnesses took and kept possession of it. The accused, shortly after his leaving, returned to and re-entered the store with a pistol in his hand and, without speaking to any one, immediately began shooting at the deceased, who was then standing in the store. The first shot missed the deceased, striking the counter about two feet from the floor; the next two entered his body near the heart, producing death almost instantly. The accused then left the store. The deceased did or said nothing to the accused upon his return to the store, except one of the witnesses testified that he picked up a stool he was standing by as the accused entered the front door of the store with a pistol in his hand, but another witness said that he did not pick up the stool until after the accused had shot at him the first time. One of the witnesses said that the accused was out of the store for two or three minutes between the first encounter and the shooting. Another said that he was away four or five minutes before he came back; and Alec Bell testified that he was out long enough to go to his home and back. The deceased, according to the testimony of all of the witnesses, had no weapon, except the stool; and one of the witnesses said that he held it up in front of himself with its legs pointing toward the accused; and another witness said that he picked it up after he was first shot at and threw it at the accused. The defendant made a statement to the jury, which agreed fully with the State's evidence as to his first encounter with the deceased. He also stated: that he returned to the store for the purpose of getting some cigarettes which he had purchased when first there, but which he left; that, when he entered the store, the deceased was standing back of the counter and Oscar Willie Robertson had a shotgun; that the

deceased came from behind the counter, picked up a stool and started toward him like lightning; that he told the deceased to get back, but he kept coming on him; that he first shot into the floor, thinking that would stop him, but it did not; and that he then shot the deceased, who was by then within a foot of him, and the deceased "went down with the stool." The defendant said nothing about his possession of the pistol.

■ The court charged literally Code §§ 26-1002, 26-1003, and 26-1004, defining murder, express malice, and implied malice. He also instructed the jury that "Legal malice is not ill-will or hatred. It is the unlawful intention to kill, without excuse, justification or mitigation, which intention, however, must exist at the time of the killing alleged but it is not necessary for that intention to exist for any length of time before the killing. In legal contemplation a man may form the intention to kill, do the killing instantly and regret the deed as soon as it is done. Legal malice is the intent unlawfully to take human life, where the law neither mitigates nor justifies the killing." The charge is attacked upon the ground that the court, in connection with his charge on malice as an element of murder, failed to tell the jury that, if the State's evidence showed circumstances of alleviation, mitigation, or justification, the burden of proving malice would not be carried by the State. There is no merit in this. So far as the record shows, there was no request for a fuller charge upon the subject of malice than that given by the court, and it is settled by this court that, in the absence of such a request, the charge as given was sufficient. *Mann* v. *State*, 124 *Ga.* 760 (53 S. E. 324); *Rouse* v. *State*, 183 *Ga.* 551 (188 S. E. 904). And that is especially true in this case, since the judge elsewhere in his charge specifically instructed the jury that the burden was on the State to prove every necessary element of the offense charged to a moral and reasonable certainty and beyond a reasonable doubt.

■ During his argument, the solicitor-general stated to the jury: "He (meaning the defendant) walked in the door with a pistol in his hand and they (the people in the store) already knew what he (the defendant) would do with a pistol." It is not necessary for us to determine whether or not such argument was proper or improper; and this is so because its alleged

impropriety was first called to the court's attention and complained of in the amendment to the defendant's motion for a new trial, which was too late. It has been held by this court many times that, when improper argument is made to the jury by an attorney for one of the parties, it is necessary, in order to make the same a basis for review, that opposing counsel make proper objection to it at the time made or invoke some ruling or instruction from the court respecting it, either by way of reprimanding counsel, or of instructing the jury to disregard it, or of declaring a mistrial. A party can not during the trial ignore what he thinks to be an injustice, take his chance on a favorable verdict, and complain later. Code, § 81-1009; *Croom* v. *State*, 90 *Ga.* 430 (17 S. E. 1003); *Farmer* v. *State*, 91 *Ga.* 720 (18 S. E. 987); *Kearney* v. *State*, 101 *Ga.* 803 (29 S. E. 127, 65 Am. St. R. 344); *O'Dell* v. *State*, 120 *Ga.* 152, 155 (47 S. E. 577); *Benton* v. *State*, 185 *Ga.* 254 (194 S. E. 166); *Mims* v. *State*, 188 *Ga.* 702 (4 S. E. 2d, 831); *Brooks* v. *State*, 183 *Ga.* 466 (188 S. E. 711, 108 A. L. R. 752).

■ . On redirect examination of the State's witness, Katie Willis, the solicitor-general asked: "Do you remember last year when he (meaning the defendant) shot another negro in the belly?" The witness, "Yes". Defendant's counsel: "We object to that question and answer. It is inadmissible." The solicitor-general, speaking to the court in the presence of the jury: "We are going to prove it." Defendant's counsel: "We move for a mistrial because the solicitor-general has now put the defendant's character in issue, and the question and answer is prejudicial to defendant." The Court: "I rule the evidence out and, gentlemen, you will disregard that question and the answer in response to it." The court then overruled the defendant's motion for a mistrial. Even if it can be said that the related occurrence was erroneous, as contended, it is sufficient to say that the error complained of was subsequently cured by the prompt action of the trial judge in ruling the evidence out and instructing the jury to disregard the solicitor's question and the answer in response thereto. *Walker* v. *State*, 124 *Ga.* 97 (52 S. E. 319); *Worthy* v. *State*, 184 *Ga.* 402 (3) (191 S. E. 457); *Carrigan* v. *State*, 206 *Ga.* 707 (58 S. E. 2d, 407). In the *Carrigan* case, supra, it was held: "Motions for a mistrial,

based upon certain answers of a witness for the State which were alleged to put the character of the defendant in issue, were properly overruled, where the court promptly sustained objections of counsel for the defendant and ruled out such questions and answers, and instructed the jury to disregard the questions and answers objected to." Also the remark, "We are going to prove it," as made to the court by the solicitor-general in connection with the question propounded to the witness Katie Willis, though improper, was not, in view of the judge's action respecting the incident to which it referred, so prejudicial in nature as to require the grant of a mistrial. Accordingly, this special ground of the motion for a new trial affords no sufficient cause for a reversal.

■ Another special ground of the defendant's motion for a new trial alleges that the court erred in omitting to charge, without request, the law concerning voluntary manslaughter as related to mutual combat. "In all cases of voluntary manslaughter, there must be some actual assault upon the person killing, or an attempt by the person killed to commit a serious personal injury on the person killing, or other equivalent circumstances to justify the excitement of passion, and to exclude all idea of deliberation or malice, either express or implied." Code, § 26-1007. Under this section of our Code, it has been held many times that, "If upon a sudden quarrel, the parties fight upon the spot, or presently agree and fetch their weapons and fight, and one of them is killed, such killing is but voluntary manslaughter, no matter who strikes the first blow." *Ray* v. *State*, 15 *Ga.* 223; *Gann* v. *State*, 30 *Ga.* 67; *Tate* v. *State*, 46 *Ga.* 148, 167; *Hart* v. *State*, 135 *Ga.* 356 (69 S. E. 530); *Ison* v. *State*, 154 *Ga.* 408 (114 S. E. 351); *Eich* v. *State*, 169 *Ga.* 425 (150 S. E. 579); *Johnson* v. *State*, 173 *Ga.* 734, 742 (161 S. E. 590); *Sheffield* v. *State*, 188 *Ga.* 1 (2 S. E. 2d, 657); *Brannon* v. *State*, 188 *Ga.* 15 (2 S. E. 2d, 654). Mutual combat exists where there is a fight with dangerous or deadly weapons, and when both parties are at fault and are mutually willing to fight because of a sudden quarrel. Code, § 26-1014; *Harris* v. *State*, 184 *Ga.* 382, 390 (191 S. E. 439); *Watson* v. *State*, 66 *Ga. App.* 242 (17 S. E. 2d, 559). "The essential ingredient, mutual intent, in order to constitute mutual combat, must be a willingness, a

readiness, and an intention upon the part of both parties to fight. Reluctance, or fighting to repel an unprovoked attack, is self-defense and is authorized by the law, and should not be confused with mutual combat." *Mathis* v. *State*, 196 *Ga*. 288, 291 (26 S. E. 2d, 606). See *McDaniel* v. *State*, 197 *Ga*. 757 (30 S. E. 2d, 612). "In order to reduce a homicide from murder to voluntary manslaughter, on the theory of mutual combat, it should affirmatively appear that at the time of the homicide both parties were in position and manifested an intention to fight. *Cornelious* v. *State*, 193 *Ga*. 25 (17 S. E. 2d, 156, 158)." *Cone* v. *State*, 193 *Ga*. 420, 428 (18 S. E. 2d, 850). Under the decisions of this court defining mutual combat, do the facts of this case show a homicide so committed? We are not inclined to think so. In our statement of facts preceding this opinion we have fully set out the evidence bearing upon this subject, and the defendant's statement. The evidence makes a clear case of murder, and it is well-settled law in this State that an aggressor will not be allowed to mitigate his crime on the theory of mutual combat when it appears, as here, that his victim had no desire to fight, and intended to fight only to the extent that a defense of his person against an unprovoked attack was necessary. In this connection, see *Roberts* v. *State*, 189 *Ga*. 36 (5 S. E. 2d, 340) ; *Cone* v. *State*, supra. The defendant planted his defense wholly upon the theory of justification, and his statement tended to establish that he killed the deceased in self-defense or under the fears of a reasonable man that the deceased was about to commit a felony upon his person. In his statement he said that the deceased made an unlawful attack upon him with a dangerous weapon, but he in no wise intimated that he was at fault or that he intended to engage in a fight with the deceased. He stated to the jury that he returned to the place where the killing occurred on a peaceful mission and for a lawful purpose, namely, to pick up some cigarettes which he had previously purchased. In *Bird* v. *State*, 128 *Ga*. 253 (57 S. E. 320), it was said: "The unlawful killing of one who has given the slayer no provocation other than the use of words, threats, menaces, or contemptuous gestures can not, in this State, be graded to voluntary manslaughter, under the doctrine of mutual combat." So, as here, when the evidence submitted by the State makes a

case of murder, and the defendant's statement shows a case of justifiable homicide, a charge upon the law of voluntary manslaughter as applicable to mutual combat is neither required nor authorized. *Johnson* v. *State*, 173 *Ga.* 734 (161 S. E. 590), and the cases there cited.

■ The evidence authorized the verdict; and the judge, under the rulings above made, did not err in refusing to grant a new trial.

*Judgment affirmed. All the Justices concur, except Atkinson, P. J., who dissents from the third headnote and corresponding division of the opinion and from the judgment, and Head, J., who dissents.*