## 30141. ZIRKLE v. THE STATE.

UNDERCOFLER, Presiding Justice.

Carolyn Dale Zirkle was convicted of murder and armed robbery. She was sentenced to life imprisonment on the murder conviction and sentenced to 20 years on the armed robbery conviction to be served consecutive to the life sentence.

The evidence shows that about 9:20 p.m. on November 14, 1974, Bob Whitfield went to the Globe Oil Company in Commerce, Georgia, to obtain some gasoline

from the decedent. After he obtained the gasoline he went into the station and saw Carolyn Dale Zirkle inside the station talking on the telephone. While she was talking over the telephone a boy came from the restroom and stood beside her. Wesley Randolph Smith and Johnny Chambers drove into the station that evening about 9:30 p.m. to buy gasoline. They observed the defendant running out of the station and her companion running out behind her but stopping momentarily to place something under his coat. The defendant backed the car up to drive away and came near them as they left the station. The license number of the car was obtained. Smith had previously seen the defendant at the Chambers station in Homer, Georgia, about an hour before that time. When Smith and Chambers were unable to locate the decedent at the service station, they went to his trailer behind it but were unable to find him. They left the gasoline station and went to the police station to report the fact. At 9:50 p.m. Deputy Sheriff Bob Serpa arrived at the station and the decedent's body was found in a storage room lying about 18 inches away from an open safe. At 1:00 a.m. the next morning the defendant and her male companion registered at a motel in Douglas, Georgia, where they made two long distance telephone calls and spent the night. Dr. Byron Dawson of the State Crime Laboratory testified that the decedent was killed by a .22 caliber bullet which was placed not more than an inch away from his shirt at the time it was fired at a downward slope.

The appellant and her male companion were later apprehended in North Carolina. In her purse was $400, some change, and an empty .22 caliber shell. While the defendant was in custody awaiting trial, she told a cell mate that she and her male companion had "cased" a liquor store and that when they went back to rob it they saw a .38 caliber gun next to the cash register and decided against that undertaking. They left the liquor store and went to a filling station where she made a telephone call to Virginia. While she was on the telephone she noticed the operator of the establishment coming out of another room where he had been counting money and noticed several stacks of bills. She and her companion decided to rob the operator. Her companion told the operator that he was

going to have to shoot him. She said that she knew her companion could not shoot the operator because he had never shot anyone before but she had. She took the gun away from her companion and shot the operator of the station. They received $900 in the robbery and it was in a small leather pouch. They threw the pouch out before they got on the interstate highway. They started toward Florida but before they got to the Florida line a roadblock caused them to stop prematurely. They spent the night in a motel before they reached the roadblock. They hid the gun somewhere on the road. After they left Florida they came back to North Carolina and they were stopped by a roadblock and captured. *Held:*

1. The appellant contends that the trial court erred in denying her challenge to the array of grand and traverse juries because Code Ann. §§ 59-112 (2) (Ga. L. 1967, p. 725), and 59-124 (Ga. L. 1953, pp. 284, 288) are unconstitutional in that they provide for the automatic exclusion of women from juries and thereby deny her a fair trial by a jury composed of a representative cross section of the community.

In *Maddox v. State,* 233 Ga. 874 (3) (213 SE2d 654) this court upheld the constitutionality of Code Ann. § 59-112 against a similar attack. In that case we said that our statute was unlike the Louisiana statute which was dealt with in Taylor v. Louisiana, 419 U. S. 522 (95 SC 692, 42 LE2d 690) because our statute does not automatically exclude women from jury service but permits any woman who does not desire to serve to so notify the jury commissioners. The Georgia statute also provides: "If at any time it appears to the jury commissioners that the jury list so composed, is not a fairly representative cross-section of the intelligent and upright citizens of the county, they shall supplement such list by going out into the county and personally acquainting themselves with other citizens of the county, including intelligent and upright citizens of any significantly identifiable group in the county which may not be fairly representative thereon." Ga. L. 1968, p. 533; 1973, pp. 484, 485 (Code Ann. § 59-106).

"The decision of the United States Supreme Court in Taylor held in part: 'Accepting as we do, however, the

view that the Sixth Amendment affords the defendant in a criminal trial the opportunity to have the jury drawn from venires representative of the community, we think it is no longer tenable to hold that women as a class may be excluded or give automatic exemptions based solely on sex *if the consequence is that criminal jury venires are almost totally male.'* (Emphasis supplied.) When considered with the entire scheme of selecting prospective jurors, the effect of the statute here attacked could not result in a jury almost totally male." *Maddox v. State,* supra.

In this case there is no evidence of the composition of the grand and traverse juries in Jackson County and we hold that the attacks on Code Ann. §§ 59-112, 59-124 are without merit.

As to the present law relating to women serving on juries see Ga. L. 1975, p. 779.

2. The appellant contends that the trial court erred in denying her motion to discover all information which might have proved arguably favorable to her under the ruling in Brady v. Maryland, 373 U. S. 83 (83 SC 1194, 10 LE2d 215). However, the record before us does not show that the trial court was asked to rule on this issue and we are not authorized to make a de novo ruling on it. We hold that the appellant's failure to assert this issue for consideration in the trial court forecloses review of the issue on appeal. *Wisdom v. State,* 234 Ga. 650 (217 SE2d 244); *Strozier v. State,* 231 Ga. 140 (1) (200 SE2d 762); *Daniels v. State,* 230 Ga. 126 (2) (195 SE2d 900); *Joyner v. State,* 208 Ga. 435 (2) (167 SE2d 221). In *Wisdom v. State,* supra, this court went further and said, that "even if this issue had been passed on by the trial court and was properly before this court for consideration, appellant would still have the burden of showing that the denial of these statements to him so impaired his defense that he was denied a fair trial within the meaning of the Brady rule." P. 652.

The appellant in this case contends that the autopsy report would have shown that the wound causing the death of the decedent might have been self-inflicted and was not the result of some criminal agency. This deduction is made by the appellant on the basis that the

medical examiner testified that he could not determine who fired the weapon that inflicted the fatal wound on the deceased. The medical examiner testified at the trial and could have given any evidence that the autopsy report would have shown. Therefore, it can not be said that the denial of the autopsy report so impaired the defense of the appellant that she was denied a fair trial.

3. The appellant requested the trial court to charge the jury that: "All admissions shall be scanned with care, and confession of guilt shall be received with great caution. A confession alone, uncorroborated by any other evidence, shall not justify a conviction." Code § 38-420. The trial court denied the requested charge.

We hold under the facts of this case that the refusal of the trial court to give the charge was harmless error.

4. The appellant contends that the evidence to support her convictions of armed robbery and murder was insufficient because the alleged confession was not corroborated by proof of the corpus delicti. The corpus delicti may be sufficiently shown by circumstantial evidence (*Johnson v. State,* 231 Ga. 138 (2) (200 SE2d 734); *McVeigh v. State,* 205 Ga. 326 (1) (53 SE2d 462)) and to prove the corpus delicti for murder in this instance, it must be established that the person is dead and that death was caused by violence or criminal agency. *Jackson v. State,* 210 Ga. 303 (1) (79 SE2d 812); *McVeigh v. State,* supra. The evidence showed that the body of the decedent was found 18 inches from an open safe; that the appellant and her male companion were seen at the station at 9:15 p.m. and were seen running from the station by two people about 9:30 p.m. Three days later when the appellant was arrested, she had $400 and a spent .22 caliber cartridge in her purse. The circumstantial evidence was sufficient to corroborate the confession of armed robbery and murder.

5. The appellant contends that the trial court erred in allowing in evidence over her objection the $400 taken from her purse on her arrest since the money was not identified as being the fruits of the robbery.

In *Jordan v. State,* 119 Ga. 443 (2) (46 SE 679) this court said: "The goods lost had no earmarks, but the co-incidence of their correspondence in *quantity,* variety, and brand with those found in defendant's recent

possession, with other evidence, was sufficient identification." (Emphasis supplied.) In *Jackson v. State,* 111 Ga. App. 192, 194 (141 SE2d 177) the Court of Appeals said: "Under the decision in *Yawn v. State,* 94 Ga. App. 400 (94 SE2d 769), the watch, the roll of dimes in the same type wrapper as that stolen from the prosecutor, and the quantity of one-dollar bills in almost the same quantity as that stolen a few hours before they were found in the defendant's possession were properly admitted in evidence over the objection as to identity." See also *Lindsey v. State,* 227 Ga. 48 (4) (178 SE2d 848).

In *Lanier v. State,* 76 Ga. App. 261 (45 SE2d 689) the Court of Appeals also held that where there is some evidence descriptive of the stolen property which is substantially conformable to the description alleged in the indictment, and nowhere contradictory thereof, the identity of the stolen property is a matter addressed peculiarly and solely to the jury.

In this case where the appellant admitted taking $900 in the armed robbery and was arrested within three days thereafter, the identification of the $400 found in her purse was a matter addressed peculiarly and solely to the jury.

*Judgment affirmed. All the Justices concur, except Ingram, J., who concurs specially, and Jordan, J., who dissents from the ruling in Division 3.*

SUBMITTED JULY 14, 1975 — DECIDED SEPTEMBER 12, 1975 — REHEARING DENIED SEPTEMBER 30, 1975.

*L. Eddie Benton, Jr.,* for appellant.

*Nat Hancock, District Attorney, Arthur K. Bolton, Attorney General, Lois F. Oakley, Staff Assistant Attorney General,* for appellee.