## BAKER *v.* THE STATE.

1. Under the facts disclosed by the record there was no abuse of discretion in refusing to postpone the trial a second time in order to allow counsel "time for study of case."
2. Neither the evidence nor the statement of the accused would have authorized the trial judge to charge the jury upon the offense of manslaughter. Even if, under the statement, the defense of manslaughter was involved, there was no request to charge upon the subject.
3. The newly discovered evidence, as to the unsoundness of the mind of the accused, would, when taken in connection with the counter-showing made by the State, not probably produce a different verdict upon another trial.
4. The evidence fully warranted the verdict, and the trial judge did not abuse his discretion in refusing to grant a new trial.

Argued June 18, — Decided July 9, 1900.

Indictment for murder. Before Judge Candler. Fulton superior court. March term, 1900.

*Lee J. Langley*, for plaintiff in error. *J. M. Terrell, attorney-general*, and *C. D. Hill, solicitor-general*, contra.

SIMMONS, C. J. This case arises upon exceptions taken to the refusal of the court below to grant a motion for new trial, made by Baker, who had been tried and convicted of murder.

1. The principal ground relied upon here by counsel for the plaintiff in error was the refusal of the judge to continue or postpone the trial of the case upon the facts and circumstances shown in the motion. Counsel had been employed, we infer from the record, at least six days before the trial actually took place. The trial was once postponed for two or three days upon his application, and, when the case was again called, he asked for a further postponement in order that he might study the case. He did not intimate to the court that any of his witnesses were absent, or that he wished time to search for evi-

dence. He simply showed that he had been busy in court with other matters, and wished time for further study of the case. This was a matter entirely within the discretion of the trial judge, who knew the facts and the business in which counsel had been engaged, and who could determine better than we whether it was proper to grant the postponement. See *Moody* v. *State*, 54 *Ga.* 660; *Charlon* v. *State*, 106 *Ga.* 400, and cases cited.

2. Complaint is made of the failure of the court to charge upon the subject of manslaughter. We have carefully read the evidence and the statement of the accused, and find nothing in either which would have authorized the submission to the jury of the question of manslaughter. According to the statement, the accused, on Friday evening, went to the house of a neighbor, where his wife, who had separated from him, was living; in the dining-room he found his wife and a man named Pitman; on entering the room he saw Pitman with his hands around Mrs. Baker's neck, kissing her, and he thereupon shot her. Even had this statement been true (and it was positively contradicted, as to the position of Pitman and Mrs. Baker, by the witnesses for the State), it was not sufficient to reduce the homicide from murder to manslaughter. The rule, as laid down by decisions of this court, is that, in order to reduce such a homicide to manslaughter, it must appear that the accused found his wife in the very act of adultery, or under such circumstances as to indicate that she had just committed the adulterous act. *Mays* v. *State*, 88 *Ga.* 399. The statement of the accused does not show that the deceased was found, at the time of the killing, under such circumstances as would reduce the homicide to manslaughter. It is true the accused did state that he had, on Wednesday morning before the killing on Friday, seen his wife and Pitman in bed together. If this be true he might have been justified, under the decision in *Hill* v. *State*, 64 *Ga.* 453, in then killing her to prevent the act of adultery, or the homicide might have been reduced to manslaughter had the killing occurred immediately after the commission of the adulterous act. Instead of moving at that time, however, the accused, according to his own statement, left the premises and subsequently invited Pitman to a conference in his room. He returned to the house where his wife was living,

on the night of the second day after he claims to have seen this misconduct of Pitman and Mrs. Baker, and then, seeing them together in the dining-room and that Pitman had his hands around Mrs. Baker's neck and was kissing her, he shot and killed her. There seems to us to be nothing in his own statement to show that the crime was manslaughter and not murder. Conceding, however, that there was enough in the statement of the accused to have authorized a finding that the crime was manslaughter, certainly there was nothing in the evidence to have done so; and, under repeated rulings of this court, it was not error to fail to charge on the subject in the absence of any request so to do. "In the absence of a proper and pertinent written request for instructions thereon, the court is not bound to give in charge the law of a theory of the case arising solely from the statement of the accused." *Hardin* v. *State*, 107 *Ga.* 718; *Carroll* v. *State*, 99 *Ga.* 36; *Taylor* v. *State*, 108 *Ga.* 384.

3. The newly discovered evidence, taken in connection with the strong counter-showing made by the State, would not, in our opinion, authorize another jury to find a different verdict. The trial judge heard the evidence and the State's counter-showing, and, in the exercise of his sound discretion, refused to grant a new trial on this ground. We can not say, as matter of law, that he abused his discretion.

4. The evidence fully warranted the verdict, and the trial judge did not abuse his discretion in refusing to grant a new trial.

*Judgment affirmed. All the Justices concurring.*