### GOOLSBY v. THE STATE.

HILL, J. 1. On the trial of one charged with murder it is not error to charge the jury that "in order to constitute malice, it is not necessary for the intent to kill to linger in the mind of the slayer for any considerable or definite length of time before the homicide takes place; if there be time enough to form the intent to kill and the killing is unlawful and takes place in accordance with such intent, then the killing would be attributable to malice." The charge is not subject to the criticism that it excludes the element of deliberation as a constituent of malice, but is a correct statement of the law.

2. The evidence in this case did not authorize the charges, as set out in the second and third grounds of the motion for new trial, on the law applicable to a principal in the second degree, etc.; and consequently the court erred in so instructing the jury. The evidence tended to show that the defendant at the time of the homicide was a boy 15 or 16 years old. His brother (Ulysses) had been whipped by the deceased the day previous to the homicide. On the day following the killing the father of the defendant, who lived eight or more miles from the deceased, took his two minor sons, Ulysses and the defendant Mike, in his buggy and carried them (*forced* them, according to the defendant's statement) with him to the home of the deceased. On arrival there the father stopped his buggy in front of the house of the deceased and got out and stood beside the buggy, calling to the deceased, "Hello, Mr. Henry," who was then in his house. He soon appeared with a pistol in his hand and asked if that was the boy (pointing at Ulysses, who was in the buggy with the defendant) he had whipped the day before. The father replied that it was, and that he (the father) had come to see if he could give the deceased (Mr. Villipigue) "some satisfaction." Whereupon Villipigue replied, "No, look out, I am going to kill him." The father then replied, "No, you kill me first," and reached in the buggy to get his Winchester rifle. Villipigue began shooting with the

pistol towards the buggy in which the defendant and his brother Ulysses were sitting. When Villipigue said, "Look out, I am going to kill him," he began shooting. The father (Granderson Goolsby.) and Ulysses Goolsby shot at Villipigue, one with a rifle, the other with a shotgun, and he was killed. There is no evidence that the defendant, Mike Goolsby, did anything but sit in the buggy and hold the lines. In his statement he said, "I did not want to go, me and my brother; but he [his father] had to force us to get in the buggy and go." The only eye-witness to the shooting testified that "Mike Goolsby was holding the mule hitched to the buggy. I did not see him doing nothing. . . If Mike had done anything I could have seen him. I did not see Mike doing anything more than I did." Granderson Goolsby was not on trial. This evidence was not sufficient to authorize a charge that "A principal in the second degree is he who is present, aiding and abetting the act to be done, which presence need not always be an actual, immediate standing by, within sight of the act; but there may be also a constructive presence, as one who commits a robbery or murder, or other crime, and another keeps watch or guard at some convenient distance." *Fuller* v. *State*, 112 *Ga.* 539 (37 S. E. 887).

3. The fourth ground of the motion for a new trial is not sufficiently definite and full to make an exception which can be considered by this court.

*Judgment reversed. All the Justices concur.*

No. 70.   JULY 11, 1917.

Indictment for murder. Before Judge Worrill. Early superior court. December 30, 1916.

*Munday & Cornwell* and *Hines & Jordan,* for plaintiff in error. *Clifford Walker, attorney-general, B. T. Castellow, solicitor-general, R. R. Arnold,* and *M. C. Bennet,* contra.