DANIEL *v.* THE STATE.

No. 7919. OCTOBER 16, 1930.

*Augustin Daly* and *B. B. Renitz,* for plaintiff in error.

*George M. Napier, attorney-general, Charles H. Garrett, solicitor-general,* and *T. R. Gress, assistant attorney-general,* contra.

HILL, J. ■ The grand jury of Bibb County indicted Will Daniel and Jesse Brazelle for the murder of Garfield Brown by shooting him with a pistol. Will Daniel was put upon trial, and the jury returned a verdict of guilty, without recommendation; and he was sentenced to be electrocuted. His motion for new trial was overruled, and he excepted.

The evidence for the State tended to show that the movant and three companions, between 10 and 11 o'clock a. m., drove an automobile from a place where movant and Garfield Brown had been gambling, to a point in East Macon, and stopped the car almost opposite No. 405 Mitchell Street. Anna Bell Jones, a witness for the State, testified: "I live at 405 Mitchell Street. I was at home on the first Sunday in November last year, when some one was shot close to my house. It was between 10 and 11 o'clock Sunday morning. I was sitting on my porch. The man that got shot was a door above my house in an automobile. They drove up there in a car and stopped, and when they stopped and sat there a while I heard one say, 'I will kill the G— d— s— of a b—,' and I looked up the street and saw a man get up like he was going to jump on him and beat him, and about that time the pistol fired, and another man says, 'Don't shoot him again; he will die at that.' I don't know who said anything about shooting him any more, but the man says, 'I will shoot him again,' and the other man says, 'Don't shoot him any more; he will die at that,' and when he said that they all got out of the car, and I could still see somebody sitting in the car behind after the three men got out of the car, and the tall man took the pistol and the other two started off, and he held up the pistol and the other two men came around the car, and the two jumped up in the car, and they done something to the man in the car, and the man in the car fell over, and the two men got out of the car, and the man with the black pants wiped his hands on the grass, the man with the crutch, and this defendant had started on by my house trotting along, and I says, 'Who is that you all done killed; aint he got no folks here?' and he says, 'Tell them acci-

dent, accident,' that is what the defendant said to me. I was on my porch when the pistol fired. Before the pistol fired I saw hands go up like they were fighting, and I heard some one say, 'I will kill the s— of a b—,' and the pistol fired. Jesse Brazelle had a pistol after this man was shot, in a shooting position, and I says, 'I wonder is he going to shoot anybody else,' and they all clustered around the car. I don't know what Jesse did with the pistol. This shooting happened in the City of Macon, Bibb County, Georgia."

Leola McCoy, for the State, testified: "I live on Mitchell Street. I was at home on my front porch the first Sunday in November when some one was killed. The car stopped almost in front of my door, but kinder to the side of the door between my house and Willa's. There were four men in the car. I heard the yellow man say, 'Stop the car,' and the defendant says, 'I will kill the s— of a b—,' and he got on his knees like, and it looked like he put one of his feet on the car seat and it looked like he put the pistol right against the man's breast. The man that got killed was not doing anything; it looked like he was half asleep; and the defendant put the pistol right against his breast and fired, and then the defendant jumped out of the car and says, 'Call the officers and tell them it was an accident,' and he started off down the road, and he came back and went to where the yellow man was and came around next to my house. The defendant had the pistol the last time I saw it. I don't know what kind of a pistol it was. The defendant was in the road right side of the car with the pistol, the last I saw of the pistol, and he went around the car and came back on the side the yellow man was, which was Jesse, and then talked to Jesse. I don't know what Jesse did then, because I got up and went in the house and came right back, and when I came out of the house the defendant was going on off down the road and saying, 'Tell them it was an accident,' as far as I could hear him. He first started off trotting, and when he got down the road he stepped up a little. I went to the car. I didn't know any of these folks. The car was probably the distance to the other door there across the hall from me when the shooting accurred, something like 50 or 60 feet. I could hear what they said all right. I didn't hear anybody say, 'Don't shoot him again,' but I heard somebody say, 'You have done enough to him; don't do anything else,' and about that time the defendant says, 'I will kill the s— of

a b——,' and it looked like he got on his knees and one foot half way out of the car. The defendant was facing the man he killed, and he put the pistol against him and fired, and it looked like the man that was killed was asleep or something. I didn't see the man that was killed have either of his hands up."

John Floyd, for the State, testified: "The first Sunday in November I was at Tony's house on Mitchell Street, and a car stopped in front of his house with four men in it. Before the car stopped I heard some one curse, saying, 'G— d— you, I will kill you,' and then the shooting took place, and the yellow man on the front seat says, 'There now, you have killed that man for nothing,' and the man that did the shooting says, 'It is an accident.' This woman Leola lives next door to Tony's. Anna Bell Jones lived below where I was. The car stopped between where I was sitting and the McCoy house. I was on the front porch of Tony's house, and was sitting on the lower side of the porch next to Saul McCoy's house. After the shooting took place the yellow man had a black looking pistol, and the yellow fellow says to the one that did the shooting, 'Hand me the pistol,' but I don't know what he did with it. Jesse is crippled. A bright looking man was under the steering-wheel of the car. I can't say whether the defendant is the man that did the shooting or not, as his back was to me and the car was closed. The man that got out of the car with the pistol and said it was an accident went on down the line running."

B. T. Watkins, for the State, testified: "I am chief of police of Macon. I had occasion to go to Mitchell Street in East Macon, Bibb County, on the first Sunday in November, 1929. I went there after I found there had been some trouble there. The car had been moved when I got there. I saw the body of Garfield Brown at the undertaker's. He was wounded on the left side of the chest. The bullet looked like it ranged through and came out a little lower on the right side under the arm. I arrested the defendant. He was down near the cemetery that night about 7:30 or 8 o'clock, the same day the shooting happened. Didn't offer him any inducement or threaten him or offer him any hope of reward to tell me about the shooting. He told me he and Jesse Brazelle and some other negroes had been off back of Mitchell Street, gambling, that day, and Garfield was with them, and Garfield came back to the car before they did, and then they came and started down Mitchell

Street, and he said he got the pistol·from Jesse to show Garfield how it worked, and the pistol went off accidentally. I think he said he bought some whisky during the day. The defendant did not explain what he had been doing all the afternoon. He was wet, and I think he said he had been in the cemetery. I would not say positively whether the defendant told me the pistol was an automatic or not, but I am under the impression he did." J. T. Poole, a police officer of Macon, testified that he received a call to go to Mitchell Street the first Sunday in November last ·year. "When I got there I found an old model two-door Ford sedan in the middle of the street, with a dead negro on the back seat. The dead negro was Garfield Brown. I saw Leola McCoy and John Floyd out there. The car was between two houses as shown on this plat. Garfield Brown was shot rather high in the left breast. I moved the car and negro. The bullet came out in the back of Garfield Brown. There was a hole burned in his shirt, the hole being much larger in the shirt than the bullet would make. John Watkins and myself arrested the defendant. My best recollection is that the defendant told me the killing was done with an automatic pistol. The dead negro was sitting on the right side of the car and fell over on the seat. He was shot in the left breast."

The defendant's statement was in part as follows: "The first Sunday in November, me and Jesse and Jewl and Garfield Brown, we went off riding, and I had about $20, and he come to my house Sunday morning and says, 'Lets go and get some whisky,' and I was buying it; we were not mad; and he says, 'Lets go on Pleasant Hill,' and I says, 'All right,' and we went and I bought a quart of liquor out there and gave $1.50 for it, and we drank it, and they come along where I live, and I says, 'Lets get something to eat,' and he says, 'Let's go to East Macon,' and me and Jesse and Garfield and Parham, and we went, and I bought a quart of liquor there, and we drank that, and Big Boy says, 'Whereabouts was they skinning today,' and I says, 'I reckon at the same place where they gambled all the time,' and we all went down there, and Garfield says, 'I didn't get paid off Saturday; lend me a dollar,' and I says, 'I haven't got it here, I have got it at home, I have got 50 cents and I will give you 50 cents; and I loaned him 50 cents and lost a quarter of the 50 cents, and when he done that he says, 'Give me the other quarter back and I will go to the car,' and I says, 'You

can stay in the car; nobody got any money here but me; I will give you anything you want;' and he went and got in the car, and then I went and got in the car, and me and Garfield were on the back seat and the other two were on the front seat, and we were going up Mitchell Street and got a little below the store, and Jesse says, 'Big Boy, you better let me drive; you are too drunk,' and he says, 'I can drive as good as you can,' and I says, 'You all hush; so much fuss the law will run on us before we get to Pleasant Hill,' and I says, 'They will catch Jesse with the pistol,' and he says, 'I will throw it on the back seat,' and I says, 'No, don't do it,' and he started to do it, and I reached for the pistol and Garfield reached for it, and it went off; and I got out of the car on the left-hand side and went in front of the radiator, and I says, 'Is he shot?' and Garfield says, 'I am shot,' and I says, 'No, you aint,' and Big Boy says, 'Yes, he is,' and I says, 'What am I going to do now?' and Jesse says, 'The best thing for you to do is to go;' and I says, 'I didn't shoot him intentionally; I am not going anywhere,' and I walked down the street, and I went home in Long's Land [Lane] until it commenced raining. I says, 'I am going to Mr. Stephens at the jail,' and when I started on down to the jail Mr. Watkins and Mr. Poole came up behind me and says, 'Whereabouts are you going, nigger?' and I says, 'I am going to jail;' and he says, 'I will save you the trouble of walking, I will carry you,' and I haven't seen them since. There hadn't been a cross word spoken in the car."

The evidence authorized the jury to find the defendant guilty.

■ In ground one of the amendment to the motion for new trial movant contends that the court erred in charging the jury as follows: "I charge you that drunkenness shall not be an excuse for any crime or misdemeanor, unless such drunkenness was caused by fraud or contrivance of another person for the purpose of having the crime committed. The general proposition is that drunkenness is not an excuse for crime; and if you should believe that this defendant was drunk and while in a drunken condition he intentionally shot and killed Garfield Brown, he would be guilty as though he had been sober." Movant contends that this charge was error and prejudicial to his rights in that it was not authorized by the evidence. It is insisted, that, while the testimony for the State was to the effect that other persons with the defendant at the

time and prior to the death of the deceased were under the influence of liquor, no witness testified that the defendant was under the influence of liquor prior to the killing, or at the time of the killing, or immediately thereafter, there being no evidence from any witness that the defendant said, acted, or did anything which caused any one to think that he was in an intoxicated condition, or under the influence of liquor at the time the deceased was killed. By reference to the defendant's statement it will be seen that he said he bought a quart of liquor on Pleasant Hill, and "we drank it;" and then they went to East Macon, "and me and Jesse and Garfield and Parham, and we went, and I bought a quart of liquor there, and we drank that." From the evidence and the defendant's statement the court was authorized to instruct the jury on the subject of drunkenness.

■ Ground 2 of the amendment to the motion for new trial assigns error on the failure of the court to give in charge to the jury section 40 of the Penal Code of 1910, in substance or otherwise. It is insisted that the defendant predicated his defense on the theory of accidental killing. The court charged the jury as follows: "It is contended in this case for the defendant that the killing was an accident. If it was an accident, then he is not guilty of any offense. That is the simple question in the case. Did the defendant intentionally shoot and kill Garfield Brown, or, if he shot him, was it an accident? If it was an accident, if the defendant did not intend to kill, then there could be no murder. But if he did intend to shoot the deceased and did shoot him, and there are no circumstances of mitigation, why then the killing would be murder." In view of the foregoing charge, it was not error in the trial judge to fail to charge section 40 of the Penal Code, "with explanation and elucidation of what accident constitutes and embodies." That section provides that "A person shall not be found guilty of any crime or misdemeanor committed by misfortune or accident, and where it satisfactorily appears there was no evil design or intention, or culpable neglect." "Where, on the trial of a defendant charged with the crime of murder, the defense relied on is that the homicide was the result of accident or misfortune, and the court has correctly charged the jury the law in relation thereto, it is not error for the court to omit to define what would constitute accident or misfortune, in the absence of a

request so to do." *Washington* v. *State,* 137 *Ga.* 218 (3) (73 S. E. 512).

■ Ground 3 of the amendment to the motion for new trial assigns error on the refusal of a request to charge the following (Penal Code, § 67) : "Involuntary manslaughter shall consist in the killing of a human being without any intention to do so, but in the commission of an unlawful act, or a lawful act, which probably might produce such a consequence, in an unlawful manner; provided, that where such involuntary killing shall happen in the commission of an unlawful act which, in its consequences, naturally tends to destroy the life of a human being, or is committed in the prosecution of a riotous intent, or of a crime punishable by death or confinement in the penitentiary, the offense shall be deemed and adjudged to be murder." Involuntary manslaughter was not involved in this case; and therefore the court did not err in refusing to give in charge the law on that subject. *Golatt* v. *State,* 130 *Ga.* 18 (2) (60 S. E. 107).

*Judgment affirmed. All the Justices concur.*