## JOHNSON *v.* THE STATE.

No. 13787. JULY 8, 1941.

*Wood & Spence,* for plaintiff in error.

*Ellis G. Arnall, attorney-general, H. G. Vandiviere, solicitor-general, E. J. Clower* and *C. E. Gregory Jr., assistant attorneys-general,* contra.

GRICE, Justice. ■ Certain testimony was offered by a witness since disqualified, the evidence having been delivered before the judge, out of the presence of the jury, under the circumstances recited in the motion for new trial. Whether or not the testimony offered was "given under oath on a former trial," within the meaning of the Code, § 38-314, we need not decide, since we are satisfied that the judge was correct in taking the view that it was otherwise inadmissible. The testimony of the girl related to two matters. She swore that at a time when she was engaged to marry Johnson, the defendant, Dixon had sexual intercourse with her forcibly and without her consent, and that upon her saying to Dixon that she was going to tell his wife, her folks, and Johnson about it, Dixon said "if I told Johnson he would kill the damn fool." She further testified that on "Sunday after Tuesday night" she told Johnson about it, which was the first time she saw him after the occurrence. She did not testify that she told Johnson of Dixon's remark that "he would kill the damn fool," nor does it otherwise appear in the record that this conditional threat was communicated

to Johnson. The rule is that a threat made by the deceased against the defendant, uncommunicated before the homicide, is not admissible on the trial of a case involving the question whether or not the slayer was justified in taking the life of the deceased, unless there is evidence tending to show that the deceased began the mortal conflict, and that the defendant killed in self-defense. In *Warrick* v. *State,* 125 *Ga.* 133 (53 S. E. 1027), the previous cases were reviewed, and the statement made that the rule as we have stated it is correct. See *Rouse* v. *State,* 135 *Ga.* 227 (4 a) (69 S. E. 180). There is no evidence before us tending to show that the deceased was the aggressor, or that the defendant killed him in self-defense. No witness was sworn who saw the actual shooting, and no witness as to what transpired immediately before. The killing occurred about nine o'clock at night on a public street in the down-town area of the city of Blue Ridge. The deputy sheriff arrived on the scene shortly afterwards and found the defendant standing on the sidewalk with his empty pistol still in his hand, and the deceased on the front seat of his car, "kinder humped over and slid out." The officer on his approach asked the defendant what the trouble was. As to his conversation with the defendant he testified as follows: "When I saw Charlie Johnson, the defendant, standing there with a pistol in his hand, and Bill Smith, I asked them what the trouble was, and Johnson says, 'Here is. your gun.' I believe he handed me the gun before I asked about the trouble; he handed me the gun; then I got out, and I asked what the trouble was. Then he says, 'Put me in jail or do whatever you please with me,' and I says, 'What's the trouble?' and he says, 'There is the man,' and I says, 'Who is it?' and he says, 'You know him.'" The deceased died on the way to a hospital. Four bullet holes were in his body, made with pistol balls. No weapon of any kind was found on the deceased or in his car. When the officer 'asked him "what the trouble was," the defendant did not then and there claim that the deceased was the aggressor or that he killed the deceased in self-defense; but his statement given on the trial contains a narrative of what he says happened at the time, which his counsel insists shows that the deceased was the aggressor, and that Johnson killed him only because he believed it necessary in order to save his own life. It was ruled by a unanimous bench in *Vaughn* v. *State,* 88 *Ga.* 731 (16 S. E. 64), that uncommunicated threats will not be re-

ceived in evidence unless they are relevant and competent, unaided by the contents of the statement. This ruling has been consistently adhered to. *Pride* v. *State,* 133 *Ga.* 438 (66 S. E. 259); *Medlin* v. *State,* 149 *Ga.* 23 (98 S. E. 551); *Vincent* v. *State,* 153 *Ga.* 278, 291 (112 S. E. 120); *Chapman* v. *State,* 155 *Ga.* 393 (117 S. E. 321); *Luffman* v. *State,* 166 *Ga.* 296 (143 S. E. 371). We do not feel justified in writing into the well-recognized rule an exception in a case where there is no eye-witness to the homicide, as suggested by counsel for plaintiff in error. That would in effect be making of the defendant a witness in his own behalf. In the *Vaughn* case, supra, in the same division of the opinion in which it is ruled that the statement could not serve as a foundation of the threat, the court through Bleckley, **Chief Justice, said:** "If the accused, by electing what matter he will inject into his statement, could render this or that fact which lies outside both of the statement and the evidence admissible when it would otherwise be inadmissible, his privilege would be not merely one of making a statement, but one of making evidence in his behalf out of that which was not evidence until he chose to give it an evidentiary stamp by introducing something into his statement to which it would be pertinent. If he could do this, he might send the evidence spinning off through forensic space in any direction he might choose to give it."

■ The other portion of the proffered testimony of the witness since disqualified, and the judge's charge complained of, are both governed by the same principle of law. Exactly how much time elapsed after the occurrence to which the witness testified and the homicide we do not know, but it was certainly some days, and may be considerably longer. It is fairly inferable from the testimony that she placed the day of the week as Tuesday, for she said she told Johnson "Sunday after Tuesday night." Then, after she had informed him of what had happened, according to the prisoner's statement, he accosted Dixon about it, and after a talk with him they parted. The evidence of the past act, the completed act, days before, at another place, under no view was admissible under any issue before the jury, as ruled by the judge. Likewise it was a correct charge to instruct the jury that the law will not justify a man in deliberately killing another for a past act or an accomplished act of sexual intercourse with his affianced sweetheart. *Jackson* v.

*State,* 91 *Ga.* 271 (18 S. E. 298, 44 Am. St. R. 22) ; *Farmer* v. *State,* 91 *Ga.* 720 (18 S. E. 987) ; *Baker* v. *State,* 111 *Ga.* 141 (36 S. E. 607).

The lurid language of Chief Justice Lumpkin in *Biggs* v. *State,* 29 *Ga.* 723 (76 Am. D. 630), so often quoted by counsel in cases similar to the one at bar, and frequently with telling effect, does not justify a homicide because of a past act of the character under discussion. In *Ellison* v. *State,* 137 *Ga.* 193, 194 (4 *a*) (73 S. E. 255), it was said by this court, whose mouthpiece was Mr. Justice Lumpkin, a grandson of the Chief Justice who wrote the opinion in the *Biggs* case, that the facts in *Biggs* v. *State,* supra, "and the points actually decided were different from a case involving killing merely in revenge for a past offense. The language used in the discussion in that case has been considered, and held not to conflict with later rulings, so as to override them. *Wilkerson* v. *State,* 91 *Ga.* 729, 733 (17 S. E. 990, 44 Am. St. R. 63) ; *Gossett* v. *State,* 123 *Ga.* 431, 435 (51 S. E. 394)."

The verdict was supported by the evidence, and it was not error to refuse a new trial.

*Judgment affirmed. All the Justices concur.*